THE STATE ex rel. ELECTRIC COMPANY OF MIS-
SOURI, Intervener and Appellant, v. JOHN M.
ATKINSON et al.

In Banc, July 15, 1918.

1. **PUBLIC UTILITY: Discrimination in Rates: Free Light to City.** A
provision in the franchise granted by a city to an electric light
company whereby the company is required to furnish the city
"without charge, lights for its offices and fire house, to the extent
of one hundred kilowatt hours per month," worth $40 per year,
is not an unreasonable discrimination in favor of the city, in
view of the fact that the city's annual account for street lights
exceeds $2,000.

2. ――――: ――――: ――――: **Rest of Franchise Valid: Collateral Pro-
ceeding.** Even though the clause in a franchise whereby the com-
pany agrees to furnish electricity to the city for its offices and fire
house is unlawful discrimination, it does not follow that the re-
maining portions of the franchise are void. If the city and com-
pany are willing to strike it out, another company, which failed
to secure a franchise, should not be heard to complain. Nor could
its invalidity be adjudicated in a collateral proceeding.

3. ――――: **Public Service Commission: Judicial Powers.** The Pub-
lic Service Commission is not a court. It is not invested with
judicial powers. It has no power to adjudge a franchise granted
by a county court to a company to do lighting throughout the
county, to be invalid as to a city incorporated after the franchise
was granted.

4. ――――: **Franchise: Certificate of Convenience and Necessity: Right
to Intervene.** A company which has been furnishing electricity
to a city and its inhabitants, under a county franchise, granted
prior to the incorporation of the city, is, upon the granting of a
franchise by the city to another company and the application by
that company to the Public Service Commission for a certificate
of public convenience and necessity, entitled to be heard in the
determination of the question as to whether the certificate shall
be issued to applicant.

5. ――――: **Competing Plants.** The policy of the Public Service Act is
to substitute regulated monopoly for destructive competition. But
the spirit of this policy is the protection of the public; the
protection given to the utility is incidental. The policy covers
a particular case when competition would impair or destroy a
utility and, as a consequence, eventually entail an increase of rates
charged the public.

6. ———: ———: High Rates. Ordinarily high rates for electric light, being correctible through appropriate regulation by the Public Service Commission, do not call for the introduction of competitive conditions.

7. ———: ———: Dependent on Circumstances. The rule of regulated monopoly as to public utilities is not applicable without discrimination in every case where competition seeks to enter. It is a rule designed, as a practical system, to promote the public good, and whether its application will accomplish that purpose depends upon the particular facts in each case. And in this case the facts are reviewed, and it is *held* that the Public Service Commission did not transgress the meaning of the Public Service Act, in granting, to an electric light company, which had obtained a franchise from a city of 6500 inhabitants, a certificate of convenience and necessity to use said franchise, notwithstanding the objections of another company, which had been for some years supplying the city with light, but made no showing of its ability to continue to profitably do so at rates which are shown to be profitable to applicant.

Appeal from Cole Circuit Court.—*Hon. J. G. Slate; Judge.*

AFFIRMED.

*Schnurmacher & Rassieur* and *Perry S. Rader* for intervener and appellant.

(1) The order of the Public Service Commission must be supported by substantial evidence; and if there is no subtantial evidence to support its orders and findings that the construction of a competing plant and the exercise of a franchise granted to it by the city are necessary and convenient for the public service, a certificate of convenience and necessity cannot issue. Laws 1913, p. 610, sec. 72; State ex rel. Wabash Railroad Co. v. Public Service Com., 196 S. W. (Mo.) 369; Potter v. Board of Public Utility Commissioners, 98 Atl. (N. J.) 30; West Jersey Railroad Co. v. Board of Public Utilities Commissioners, 87 N. J. L. 178; State v. Florida East Coast Ry. Co., 67 So. 910; State v. Great Northern Ry. Co., 130 Minn. 57; Erie Railroad Co. v. Board of Public Utility Commissioners, 87 N. J. L. 441. No judgment for plaintiff of a trial court which

is not supported by substantial evidence can stand; and certainly there is nothing in the Public Service Act that requires a higher consideration of the orders of the Public Service Commission at the hands of this court than it accords to judgments of courts of general jurisdiction. (a) If this case is to be considered by this court as the judgments of circuit courts in law cases are treated, then the order of the Commission cannot stand unless it is supported by substantial evidence, for the judgment for plaintiff of a circuit court in a law case cannot stand, unless the finding of the court sitting as a jury, or the verdict of the jury, is supported by substantial evidence. Cole v. Armour, 154 Mo. 333; State ex rel. v. Elliott, 157 Mo. 609; Uhrich v. Osborn, 106 Mo. App. 492; Colonial Trust Co. v. McMillan, 188 Mo. 567; Hethcock v. Crawford County, 200 Mo. 176. (b) If the order of the Commission is to be tried and determined as an equity suit is considered by this court on appeal, as we believe the statute (Laws 1911, p. 642, sec. 111) requires, the order of the Commission cannot stand unless it is supported by substantial evidence, nor does it have any presumption of correctness, since the ultimate responsibility for the order rests upon this court. Hoeller v. Haffner, 155 Mo. 589; Southern Com. Sav. Bank v. Slattery, 166 Mo. 448; Fitzpatrick v. Weber, 168 Mo. 562; Rumsey Mfg. Co. v. Kaime, 173 Mo. 551; Lusk v. Atkinson, 268 Mo. 118. (2) A duplication of plants is not the remedy for excessive rates. Full and ample power is vested in the Public Service Commission to "determine and prescribe just and reasonable rates and charges thereafter to be in force for the service to be furnished, notwithstanding that a higher rate or charge has heretofore been authorized by statute," and it is made the imperative duty of the Commission, upon its own motion or upon complaint, after a hearing, to determine and prescribe just and reasonable rates. And where there is an existing plant, with ample facilities to fully meet every reasonable demand for service, and it is doing so, with no complaint of any kind, competition and duplication of plants are

not the remedy for excessive rates, but such duplication means turmoil and cut-throat competition and loss of property, which must be borne by one or the other of the companies and in the end by the consumers themselves. Laws 1913, p. 605, sec. 69, sub-sec. 5; Weld v. Gas & Electric Light Commissioners, 197 Mass. 556; In re Amsterdam J. & G. Railroad Co., 33 N. Y. Supp. 1009, 86 Hun. 578; In Matter of Wood, 99 App. Div. (N. Y.) 349; Pond's Public Utilities, p. 10; Pond on Public Utilities (1913), secs. 547, 548; In Matter of Kings, Queens & Suffolk Railroad Co., 6 App. Div. (N. Y.) 245; Calumet Service Co. v. Chilton, 148 Wis. 334, 365.

*A. Z. Patterson* and *James D. Lindsay* for John M. Atkinson et al., respondents; *Amandus Brackman, Wilfred Jones* and *I. R. Kelso* for applicant.

Application of Western Power & Light Company. (1) The petition or application filed by the Western Power & Light Company with the Public Service Commission, was sufficient to authorize the Commission to grant the certificate of convenience and necessity. That it was in strict compliance with the provisions of the Public Service Act is not questioned. (2) The county court of St. Louis County could not bind the city of Maplewood in its capacity as a city of the third class, in its exercise of the police powers given to it, in its right and power to establish and open up new streets, alleys and public grounds, and in its undoubted right by franchise to determine what company, if any, may occupy such new public streets, alleys and grounds. The Public Service Commission law does not, in any respect, deny to cities of the third class the right to enter into contracts for public lighting, but on the contrary, recognizes this right. Babbitt v. Albion Elec. Lgt. & Power Co., P. U. Rep. Ann. 1915 F. p. 648. (3) Appellant asserts "that there is no basis, either in the law or the evidence, for the certificate of public convenience and necessity." We will not indulge in a lengthy discussion of monopoly

and competition for the very good reason that most of the cases which have been decided, where companies have been denied certificates of necessity, are cases where a new company is incorporated and desires to enter the field against a company already on the ground and operating under valid and statutory franchises, and any discussion found in those cases would not be controlling in a case like the one now under consideration. In the cases where the question of monopoly and regulation are discussed, all of the elements of ruinous competition are present, to some exent at least, while in the present case, every element of ruinous competition is lacking. If the appellant company had a valid and statutory franchise in the City of Maplewood, and was doing business in a limited field, and its facilities were sufficient to supply lights to the entire community at reasonable rates, and a new company desired to enter the field for the purpose of competing solely for the business of Maplewood, then it is clear that the field would not be large enough to sustain two systems of supply profitably, and the new company as well as the old company would both be compelled to go into bankruptcy, if permitted to compete, resulting ulimately, injuriously to the public; then, the Public Service Commission would deny to the new company a certificate of public convenience and necessity to exercise its franchise; but in a case like the one now under consideration, the Commission cannot find any of the necessary elements of ruinous competition.

BLAIR, J.—In Division Commissioner Roy filed an opinion as follows:

"On February 14, 1916, the Public Service Commission granted to the Western Power & Light Company, a corporation of St. Louis County, a certificate of public convenience and necessity to construct, maintain and operate an electric light and power system in the city of Maplewood in said county, under a franchise granted by said city. The Electric Company of Missouri, appellant herein, was an intervener in that

proceeding; and, after such certificate was ordered to issue, it proceeded by *certiorari* in the circuit court of Cole County to have the order of the Commission reviewed. The circuit court affirmed that order, and the cause is here on appeal.

"The city of Maplewood was incorporated as such in 1908. It is about eight or nine blocks wide from east to west, the streets and blocks being more artistic than regular in their direction and form. The eastern half is more compactly improved than the part further west, there being no appreciable difference in that respect between the eastern half and the adjoining portion of the city of St. Louis. The boundary between the two cities does not follow a street, but runs diagonally through lots and blocks. The population of Maplewood is about 6500.

"Before Maplewood was incorporated, and as early as 1892, the appellant, at first under a different name, began, and has since continued, to furnish the citizens of that county, including what is now the city of Maplewood, with electric light and power. So far as the evidence shows, the appellant has never owned a generating plant. The evidence does show that it procures its electricity from the Union Electric Light & Power Company, and that it furnishes to the latter company a different kind of electric current from Keokuk, the latter current not being used in Maplewood. Just what the relations are between appellant and the Union Company does not appear.

"The appellant, through a holding company, owns the gas business which furnishes gas to Maplewood and to the portions of the city of St. Louis adjoining Maplewood. It also owns a subway system.

"It is conceded that appellant never obtained any franchise from the city of Maplewood to do business in that city, but that it is continuing to operate under its original county franchise.

"At the time of the granting of the certificate to the Western Company by the Commission, the appellant was furnishing to the citizens of Maplewood and of other

cities and rural districts   in said county light at the maximum   rate of twelve cents   per kilowatt   hour. Just across the line in St. Louis, the Union Electric Light & Power Company,   from which appellant gets its current, was furnishing it at a maximum of nine cents.    There was a similar difference in the rates on gas in favor of St. Louis, it being furnished by appellant on both sides of the line.   Appellant was at that time lighting about 643 residences and serving 144 commercial-light and power consumers in Maplewood.   It was furnishing to that city about 150 street lamps of 60 candle-power each, at $14.40 per annum for each lamp.   Its business in Maplewood was about seventeen per cent of its total business in that county.

"It is conceded that the contract for street lighting made between the city and the appellant in 1910 for a period of five years was never submitted to an election for the approval of the votes of the city, and that it was not so submitted for the reason that both the city officials and the appellant were of the opinion that it would be defeated if it were submitted.   It is also conceded by the parties herein that such contract was illegal for that reason.

"The subject of cheaper lights was discussed by the representatives of the city, and by the interveners herein, the Civic League of Maplewood and the South Maplewood Improvement Association.   They applied to appellant for lower rates and received a good natured laugh in answer.   They were told by appellant to apply to the Public Service Commission.

"The Western Power & Light Company had then been in business for about two years furnishing electricity in various cities in St. Louis County and in the rural portions of that county.   It has a generating plant in that county.   Application was made to it on behalf of Maplewood for rates, and the answer was made by the Western Company that it did not care to name any rates if they were sought merely for the purpose of being used against the appellant.   It was assured that the application was not made for that

purpose. Competition bids were called for by the city with the result that the appellant offered to furnish the 60 c. p. lamp at $14.40, while the Western Power & Light Company offered them at $11.20. The latter offer was accepted, and a contract made in accordance therewith. It was a part of the agreement between the city and the Western Company that the latter should have the right to do a general electric business in the city. That company was given a franchise by the city to do such business. That franchise fixed ten cents as the maximum rate. Both the franchise and contract were approved by more than two-thirds majority at an election held for that purpose. Both the contract and the franchise were for a period of ten years. That franchise contained the following:

" 'Section 4. Grantee shall, without charge therefor, furnish free to the city, lights for its offices and fire house, to the extent of one hundred kilowatt hours per month.'

"And also this:

" ' Section 5. Nothing in this ordinance shall be construed as conflicting in any way with any State Laws now in force, or which may hereafter, during the term of this franchise, be in force, governing or regulating the conditions of light and power, service, or the rates to be charged for same by public utility companies in the State of Missouri.'

"The evidence tends to show (and it is not contradicted) that prior to and at the time of that election the appellant made a very active campaign to defeat the approval of such contract and franchise. It issued many circulars, and put many agents in the field for that purpose.

"On the hearing before the Commission the officers of appellant made no statement of the price paid by it to the Union Electric Light & Power Company for the current. They did testify that they had made a calculation, taking into consideration the necessary annual allowance to amortize the plant, and that the rate offered to the city by it could not be reduced without re-

ducing the net income below the point where it would pay interest on the investment.

"The president of the Western Power & Light Company testified that the service could be furnished by that company on the terms offered by it at a reasonable profit after making reasonable allowance for amortizing the plant.  There was no evidence to the contrary.

"I.  Appellant contends that the provision in the franchise granted to the Western Power & Light Company by which said company was required to furnish the city, without charge therefor, light for its offices and fire house to the extent of one hundred kilowatt hours per month, is a discrimination in favor of the city as against other consumers, and that such franchise is void for that reason.

"There are several reasons why that franchise should not, in this proceeding, be held void.  In the first place, it does not appear how much electricity the city uses to light its offices and fire house.  Whether it would amount to a hundred kilowatt hours per month is not shown.  Respondents ·in their brief say that the service thus received by the city is worth about $40 per annum.  That assertion is not denied.  In determining whether a discrimination is made in favor of the city, we must take a comprehensive view of the whole situation..  The city has been paying annually to the appellant more than $2000 for street lights, and would continue to pay about that amount under the new contract with the Western Power & Light Company.  That fact must be considered along with the item of $40. Now considering those two items together it would be entirely unreasonable to hold that such allowance of $40 on the city's total account is, under the circumstances, a discrimination in favor of the city.  In the second place, if it were an unlawful discrimination, it would not necessarily follow that it would render illegal the remaining portions of the franchise.  Both the city and the Western Power & Light Company are here affirming in their joint brief that the remainder of the franchise

is valid though its provision under discussion be held void. If the parties to that franchise are satisfied with what is left of it after striking out that provision, there is no reason why the appellant should be heard to complain. It is generally conceded that the Public Service Commission is not a court. To say the least, it is not its primary business to determine legal questions, and especially it should not undertake to determine a legal question in which the party raising it is not concerned. We are sustained in this position by the appellant's brief herein. Its only franchise for doing business in Maplewood is a franchise granted by the county court before Maplewood was incorporated. Anticipating that the validity of its franchise would be attacked in this court for that reason, the able counsel for appellant, in their brief, say:

" 'The Electric Company of Missouri has a valid franchise for furnishing electricity to the inhabitants of the territory embraced within Maplewood, and that franchise is immune from attack in this proceeding.

" '1. The Public Service Commission had no jurisdiction to determine the validity of the franchise granted to Intervener by St. Louis County, since that is a judicial question.

" 'Besides even if the jurisdiction of this court were original and the application had been made to it in the first instance, the validity of Intervener's franchise could not have been adjudicated, since that is a collateral matter. [Bank v. Rockefeller, 195 Mo. l. c. 42.]'

"We agree that the question as to the validity of such county franchise within the city of Maplewood is both judicial and collateral herein, and that it was not in the province of the Public Service Commission to inquire into it in this proceeding. The fact that the appellant was 'on the ground' furnishing electricity in Maplewood is sufficient to entitle it to be heard in determining the question as to whether a certificate of public convenience and necessity shall be granted to the appellant. On the other hand a franchise has been

granted by the city to the Western Power & Light Company, and that franchise has been approved at an election held for that purpose.

"The statute empowers the Public Service Commission to issue a certificate of convenience and neccessity, or to refuse it, but does not empower it to adjudicate the question of the validity of the franchise.

"These two companies stand here, each with a franchise in its hand. We will treat them both alike, and, putting aside the question as to the legality of the franchises, will consider the only question properly before us, i. e. whether the certificate of public convenience and necessity was properly ordered to issue.

"II. This is an era in which we, in a large measure if not fully, realize a necessity for the conservation of energy and of natural resources. Such conservation is better secured by the regulation of public utilities than by their duplication. The Public Service Commission of this State has expressed itself on that question. In re Kansas City C. R. Co., 2 Mo. P. S. C. l. c. 417, it said:

'And the requirement of a finding of necessity, as well as of public convenience, further implies that if another utility is adequately rendering the service proposed, or is able and willing or may be required to do so, then the necessity would not exist and the certificate should be rufused.'

"There is much to be said against the appellant in this case. It has no generating plant. The line separating Maplewood and St. Louis runs diagonally through streets, lots and blocks. East of that line the Union Electric Company serves its patrons under a maximum rate of·nine cents. It turns its current over to appellant which serves its patrons west of that line under a maximum of twelve cents, demanding for the Maplwood service the same compensation which it gets in other smaller towns and in rural districts in the county. When called on by the city for lower rates it answered with a laugh, and with the sug-

gestion that the city go before the Public Service Commission. Rather than reduce its rates it preferred to spend its money in making an active campaign to defeat the contract and franchise awarded by the city to the Western Power & Light Company at an election called for that purpose. By that contract with the last named company the city saves $3.20 on each street light, and the general service gets a maximum of ten cents instead of twelve.

"Appellant's officers under oath say that their rates cannot be reduced without a loss of the reasonable income on the investment. That evidence is not refuted and we shall accept it as true. On the other hand, the officers of the Western Power & Light Company say that it can profitably furnish the service at the lower rates proposed by it. That evidence is not refuted and we shall accept it as true. Neither one of these companies has given us the basic facts on which their calculations were made. It may be that the appellant pays too much for its current. Whatever the cause may be, it is an unfortunate condition. The city and its citizens should not be compelled to pay more than the service is worth, and it is not worth more than it can be furnished for at a reasonable profit. If it can be furnished by the Western Power & Light Company on its proposed terms at a reasonable profit, the appellant has no right to any higher rates, although it cannot furnish it at the lower rates without a loss.

"Pond on Public Utilities, sec. 444, says: 'While the interests of the owners of the property are to be considered they are not entitled to a greater return than it can normally earn under proper management. In other words, as between the two parties, the public or the consumer has the right to receive the service at its fair value or for what it is worth. The customer has the right to demand that no more shall be exacted from him for such service than the reasonable value of the service, and should not be subjected to the payment of unreasonable rates simply that stockholders

may earn dividends. If such a corporation can not maintain and operate its plants so as to pay satisfactory dividends on all its outstanding stock, this is a failure which the Constitution does not require to be remedied by imposing unjust burdens upon the public.'

"In Covington & Lexington Turnpike Co. v. Sanford, 164 U. S. 596, it was said: 'The public cannot properly be subjected to unreasonable rates in order simply that stockholders may earn dividends.' "

The opinion then concludes that: "As between regulation and competition in this case it seems clear to us that the former is the better remedy."

The opinion prepared by the learned Commissioner we regard as sound except in the conclusion reached. Let it be conceded that the act establishing the Public Service Commission, defining its powers and prescribing its duties is indicative of a policy designed, in every proper case, to substitute regulated monopoly for destructive competition. The spirit of this policy is the protection of the public. The protection given the utility is incidental. The policy covers a particular case when competition would impair or destroy a utility and, as a consequence, eventually entail an increase of rates charged the public. There are other considerations, of course, but that mentioned forms the principal basis of the rule. A corollary is that, ordinarily, high rates do not call for the introduction of competitive conditions. These, generally, are said to be correctible through appropriate regulation by the Commission. It is to be kept in mind, nevertheless, that the rule is not a fine-spun theory, applicable without discrimination in every case where competition seeks to enter. It is held to be a practical system designed, as stated, to promote the public good and the particular facts in each case are to be regarded in applying it. In this case the Electric Company secures its current from another corporation operating chiefly in St. Louis. Its contract with that corporation is not in evidence. It does appear that the Electric Company cannot profitably supply Maplewood with current at rates which are shown to

be profitable to the Western Power & Light Company. This situation necessarily arises out of the contract rate between appellant and the Union Electric Company. The result of this is that a considerable portion of Maplewood must remain unlighted unless the present order is sustained or the contract rate for appellant's current can be reduced by appropriate proceedings before the Public Service Commission. Laying aside legal obstacles, if any, a very practical difficulty is met when we commence to consider the proceedings necessary to coerce a lower rate from the Union Electric Company in favor of appellant. The result would necessarily depend upon factors which, to some extent, have little to do with rate conditions in Maplewood. The delay would be considerable and the expense large. Meanwhile a considerable portion of Maplewood must remain in darkness. We do not say these conditions in an ordinary case would have much weight. In this case these two corporations are operating in numerous other places. The per cent of appellant's business which would be affected by competition thus introduced is quite small. It has no plant, in the ordinary sense, in Maplewood. It has no generating plant anywhere. Two-fifths of the poles it uses in Maplewood are those of other corporations. The probabilities that it will be injuriously affected are small. There is little likelihood the competition will prove "destructive." The increase in business in the whole territory served is ten per cent per annum. The needs of the city are great and pressing. Its funds are in such condition that it is not possible for it to pay appellant's rate and secure the lights necessary for its illumination. In these circumstances we cannot say that the Public Service Commission was wrong in issuing its certificate. That certificate may be issued if the Commission finds the improvement necessary or convenient. [Sec. 72, Laws 1913, p. 610.] We do not think this record justifies us in holding the Commission's finding was unwarranted.

The judgment is affirmed. All of the judges concur, except *Faris, J.,* dissenting, and *Bond, C. J.,* not sitting.