STATE EX REL. MISSOURI, KANSAS & OKLAHOMA COACH LINES, INC., ET AL., APPELLANTS, v. PUBLIC SERVICE COMMISSION OF MISSOURI, RESPONDENT.—179 S. W. (2d) 132.

Kansas City Court of Appeals. March 6, 1944.

318

*James P. Aylward, Ralph M. Russell, C. J. Quimby* and *June R. Rose* for appellants.

*John P. Randolph,* General Counsel and *Lester G. Seacat,* Assistant Counsel, for respondent, Public Service Commission.

*D. D. McDonald* for Raymond R. Terrill.

BLAND, J.—This is an appeal by Missouri, Kansas and Oklahoma Coach Lines, Inc., and Southwestern Greyhound Lines, Inc., which, for convenience, are hereinafter referred to as protestants, from an order and judgment of the Circuit Court of Cole County, affirming an order of the Public Service Commission. The order granted to Raymond R. Terrill, hereinafter referred to as Terrill, a certificate of convenience and necessity authorizing him to operate as a passenger-carrying motor carrier between the cities of Springfield and Lebanon, over and along U. S. Highway No. 66. Terrill had theretofore been granted authority to operate, as a motor carrier of passengers over Highway No. 66, between Springfield and Lebanon, with authority to serve intermediate points, but with no authority to carry passengers either way between Springfield and Lebanon. In the present application Terrill sought, and was given authority by the Commission, to carry passengers between said points. At the hearing the application of Terrill was opposed by the contestants.

The Commission made a report and order reciting: "Applicant operates two roundtrips daily between Lebanon and Springfield, sub-

ject to the limitations'' that he carry no passengers between Lebanon and Springfield in either direction.

"The application is supported by the testimony of the applicant, Mr. Raymond R. Terrill and nine other witnesses. Their testimony may be summarized as follows:

"Service by applicant between Springfield and Lebanon would not necessitate any more travel mileage, as the vehicles of applicant will move on the same time schedules as now and it would not be necessary, in the event the application is granted, for the applicant to place additional sections on his time schedules as his coaches can handle additional traffic. Mr. Terrill stated that he has had requests for the establishment of service between Lebanon and Springfield and that a rendition of such service would be profitable to him.

"Mr. H. A. Stone, General Agent of the General American Life Insurance Company, who resides in Springfield, has occasion to travel between Lebanon and Springfield at an average of about two trips weekly. Mr. Stone states that the railway service rendered by the St. Louis-San Francisco Railway Company is crowded and that the Southwestern Greyhound buses are 'usually full of passengers. and occasionally more than full', thus necessitating him to wait for a second section of the time schedule. Mr. Stone's principal objection to the service of the presently authorized carriers between Lebanon and Springfield is that the time schedules are not times to serve conveniently between said points.

"Mr. H. T. Goatcher a resident of Springfield, Missouri, a representative of Hermon Brownlow Company selling automobile parts and accessories, likewise makes complaint of the time schedules presently operated, particularly pointing out that the time schedule leaving Springfield at 7:54 A. M. would be more convenient for his company if it were operated at about 8:30 A. M.

"Mr. Jack Lloyd of Springfield, Missouri, district manager of the Springfield office of the General American Life Insurance Company at St. Louis, considers that time schedules now operated by the applicant in his local service heretofore authorized by the Commission would be convenient for his use in traveling from Springfield to Lebanon.

"Miss Virginia Turner, Mrs. Mable James, Miss Muriel Appling and Miss Elaine Wray who reside in Lebanon but who are employed or attend college at Springfield, prefer the time schedules of the applicant, between the points involved herein, to those of the protestants.

"Mr. Homer Lee Hurst, a police officer of Lebanon, Missouri, testified that the service of the applicant would be more convenient to passengers, Lebanon to and from Springfield, for the reason that the station of the applicant is more nearly in the central part of the

city of Lebanon, and that the time schedules of applicant are more convenient than those of protestants.

"Mr. Charles Rutherford of Lebanon, corroborates the testimony of Mr. Hurst and states that the vehicles of the protestants are operated more in the afternoon and night, and do not provide convenient service for the people of Lebanon who desire to go to and return from Springfield in a one day journey.

"Protestants' witnesses testified generally as follows:

"Miss Edith Mitchell whose home is in Lamar, Missouri, but who had occasion to use motor carrier service between Springfield and Lebanon at least every other week during the past year or so, never has had any difficulty in finding transportation available when she wanted it. Of like effect was the testimony of Miss Ila Long and Mr. Orlie Hughes.

"Protestants' Exhibit No. 1 was considered in evidence, being time schedules of the Missouri, Kansas and Oklahoma Coach Lines, Southwestern Greyhound Lines, Missouri Pacific Transportation Company, and the St. Louis-San Francisco Railway Company.

| | MKO | SWG | SWG | SWG | SWG | MO.P | SWG | MO.P | MKO | SWG |
|---|---|---|---|---|---|---|---|---|---|---|
| "Lv. Lebanon | 12:45 | 3.48 | 7:53 | 1:53 | 2:53 | 2:15 | 6:53 | 8:55 | 9:40 | 10:10 |
| Ar. Spfg. | 2:41 | 5:31 | 9:36 | 3:36 | 4:36 | 4:00 | 8:36 | 10:40 | 10:25 | 11:52 |

| | MKO | SWG | MO.P | SWG | MO.P | SWG | SWG | MKO | SWG | SWG |
|---|---|---|---|---|---|---|---|---|---|---|
| "Lv. Spfg. | 1:50 | 3:14 | 6:00 | 7:54 | 12:00 | 12:44 | 2:54 | 4:30 | 8:24 | 11:04 |
| Ar. Lebanon | 3:30 | 4:57 | 7:45 | 9:37 | 1:45 | 2:27 | 4:37 | 6:13 | 10:07 | 12:47 |

FRISCO RAILROAD

| "Lv. Lebanon | 6:50 | 10:00 | 11:00 | 4:23 | |
|---|---|---|---|---|---|
| Ar. Spfg. | 6:20 | 11:20 | 12:35 | 6:05 | (Underscored indicates P. M.) |
| Lv. Spfg. | 6:25 | 1:25 | 2:45 | 5:10 | |
| Ar. Lebanon | 7:39 | 3:02 | 4:05 | 6:38 | |

"It is noted that there are 14 round trip schedules daily by presently authorized carriers, motor and rail.

"The applicant operates two round trip schedules between Lebanon and Springfield. Schedules leave Lebanon for Springfield at 6:00 A. M. and 11:10 A. M., arriving at Springfield at 8:00 A. M. and 1:05 P. M., respectively. Time schedules leave Springfield for Lebanon at 8:20 A. M. and 4:45 P. M., arriving at Lebanon at 11:20 A. M. and 7:00 P. M., respectively.

"Mr. H. E. Delude, district passenger agent of Southwestern Greyhound Lines, testified that he had had no requests for more or different service between Lebanon and Springfield and that he had operated no extra sections on any time schedules solely between Lebanon and Springfield. Mr. Delude stated that his company would be agreeable to such readjustment of the time schedules as the Commission might deem necessary.

"The Commission in its Report and Order in Case No. B-8100 recognized the applicant herein as being desirous of rendering local service from and between points intermediate to Springfield and Lebanon to said cities, basing its order on the convenience and necessity of the people of Phillipsburg, Niangua, and Conway to said cities, Springfield and Lebanon; and considered that the carriers then and now authorized to serve between points, Lebanon and Springfield, were able to handle passengers between said points.

"From the resume of the evidence herein it seems that the question of whether the problem is one of readjustment of time schedules of the presently authorized carriers between Springfield and Lebanon, or whether it is one of need of additional carrier service between said points is a close one.

"The problem of transportation due to the tire rationing and proposed gasoline rationing programs has become, as all know, a critical one.

"The evidence shows that the utilization of the applicant's vehicle traveling on his time schedules between Lebanon and Springfield would be of convenience to a considerable number of the traveling public, and the need for which may well be augmented considerably in future months. The applicant may render the service between Lebanon and Springfield by his presently authorized vehicles without the use of additional equipment or mileage; and to require the presently authorized carriers serving between these points to rearrange time schedules to accommodate the convenience of the public as to time, would necessitate the far-reaching adjustment in time schedules of the protestants' trans-state operations.

"Consequently, the Commission believes and finds that the public convenience and necessity would be propounded by the granting of the application.

"It is therefore,

"Ordered: 1 That Raymond R. Terrill, holder of Certificate of Convenience and Necessity No. 6 be granted an extension of authority authorizing him to operate as a passenger-carrying motor carrier, intrastate, over a regular route as follows:

"From Springfield, Missouri, over United States Highway No. 66 to Lebanon, Missouri, and return, with authority to receive and discharge passengers between said named points."

The record discloses that the Commission, in its report, has stated in a general way and correctly, the testimony of the witnesses mentioned by it. In addition to the evidence alluded to in the Report and Order of the Commission, there was testimony of one W. F. Hicks, who was the General Manager of the Missouri-Kansas and Oklahoma Coach Lines. This witness testified that his company operates two schedules per day between Springfield and Lebanon, using a twenty-nine passenger coach on one schedule and a thirty-seven passenger

coach on another; that the Missouri Pacific Transportation Company operates two trips, the Southwestern Greyhound Lines, Inc., six trips, and the St. Louis and San-Francisco Railroad, four trips in each direction; that for the month of May preceding the hearing, in July, 1942, his company had an average of fourteen vacant seats on its busses leaving Springfield for Lebanon at 4:30 P. M., and that on the return trip leaving Lebanon for Springfield at 9:40 P. M., his company had an average of twelve vacant seats for the month; that during the month of June on the schedule leaving Springfield at 4:30 P. M., his company had an average of 17.4 vacant seats, and on the return trip from Lebanon to Springfield, leaving Lebanon at 9:40 P. M., his company had an average of 16.3 vacant seats; that the vacancies in June were larger than in May, showing that his company's business was decreasing, and that there was a smaller amount of business than when he testified, in April, 1942, in the Frisco case, hereinafter mentioned.

There was, also, other testimony on the part of the witnesses for the protestants that they did not believe that additional service was necessary; that the present schedules of the authorized bus carriers are more convenient to the largest group of people but, if the Commission found that additional service was necessary, or, it was necessary to change the time schedules in order to more conveniently serve the public, such change would be made by protestants within eight or ten days.

In reviewing the Order of the Commission we are confined to a consideration as to whether the order is supported by substantial evidence and is reasonable or lawful (State ex rel. Chi. Gr. West. R. Co. v. Public Service Commission of Mo., 51 S. W. (2d) 73, 76), and the order is not unreasonable unless it is arbitrary, capricious and without reasonable basis. [State ex rel. Shepherd v. Public Service Commission of Mo., 142 S. W. (2d) 346, 347.]

It is insisted by the appellants that the court erred in affirming the order of the Commission because, under the evidence, the order was unlawful, capricious and arbitrary; that, ''No witness was offered on behalf of the applicant before the Commission who knew how much service was presently available between Springfield and Lebanon by the Missouri Pacific Transportation Company, Southwest Greyhound Lines, Inc., M. K. O. Coach Lines, Inc., and the St. Louis-San Francisco Railroad, that is, they did not know how many schedules were operated, nor did they know the hours or time at which such schedules were operated.''

This statement of appellants is true as a general statement, but applied to the facts in the case at bar, it is not of controlling importance. The witnesses who testified, for the most part, were not interested in how many schedules were operated, or the hour or hours at which all of such schedules were operated, but they were interested

in getting transportation at the times that suited their particular needs. They had sufficient knowledge of the schedules of these bus companies involved to know that their schedules were not sufficient for their needs. There was evidence that some of the busses did not, at all times, run on time; that, at times, passengers were required to stand in the busses and were required, at times, to wait for a section; that sometimes three or more sections were operated on the various schedules because of the crowded conditions of the busses. There was evidence tending to show that the witnesses were required to wait for an available bus, in some instances as long as thirty minutes, or more. There was, therefore, evidence not only that the schedules, if they had been maintained, did not fit the needs of the witnesses, but that they were not maintained, in all respects, although the evidence shows that there were fourteen round trips daily, ten by bus and four by rail between Lebanon and Springfield, attempted to be maintained and, for the most part, were maintained by the companies. The schedule set forth, supra, discloses that there was no bus leaving Lebanon between 7:53 A. M. and 1:53 P. M., and none leaving Springfield between 7:44 A. M. and noon. It was due, in part, to this fact, together with other facts including the fact that there was a long time elapsing between some of the trains of the railroad company and the fact that the trains of the latter were crowded and had no seats available from Lebanon to Springfield and none in the opposite direction, except for those who boarded the trains sometime before they were due to depart, inconvenience was caused to the witnesses.

We have examined the evidence and found only one witness, Homer Hurst, who appears to have been mistaken as to the busses not being run at the time his family desired to use them, and this is the only witness whose testimony the contestants specifically call to our attention in reference to this matter.

It is insisted that, although the Commission found that public convenience and necessity would be served, there is no sufficient finding of facts showing necessity for the Terril service granted. "Necessity" as used in the phrase "convenience and necessity", as applied to regulations by Public Service Commissions, does not mean essential or absolutely indispensable, but used in the sense that the motor vehicle service would be such an improvement as to justify or warrant the expense of making the improvement; that the inconvenience of the public occasioned by the lack of motor vehicle transportation is so great as to amount to a necessity. [Chicago, R. I. & Pac. Ry. Co. v. State et al. (Okla.), 849.] "Any improvement which is highly important to the public convenience and desirable for the public welfare may be regarded as necessary. If it is of sufficient importance to warrant the expense of making it, it is a public necessity. . . . Inconvenience may be so great as to amount to necessity". [The Wab.,

Chester & Western R. R. Co. v. The Commerce Commission, ex rel. 309 Ill. 412, 418.] "If there was a strong and urgent need of the connection here sought, then there was a necessity for it." [Wisc. Tel. Co. v. R. R. Commission, 162 Wisc. 383, 398.]

However, the fact that the proposed service, over the same territory that is being covered by other operators, may accommodate a few individuals does not justify the granting of a certificate to the applicant. The convenience and necessity which the law requires, is the convenience and necessity of the public, as distinguished from that of an individual, or any number of individuals. [Chi. R. I. & Pac. Ry. Co. v. State et al., *supra*, l. c. 851; Choate v. Commerce Commission, 309 Ill. 248; Canton-East Liverpool Coach Co. v. Public Utilities Commission, 174 N. E. 244 (Ohio).] "To warrant the licensing of additional public utility for transportation purposes, it must appear that the present serving facilities are inadequate and inconvenient to the traveling public, and that the proposed facilities will eliminate such inadequacy and inconvenience. [Chi. R. I. & Pac. Ry. Co. v. State, *supra*, l. c. 851.]

While, it is true that most of Terrill's witnesses testified merely as to their own conveniences, they are of sufficient number and their testimony was of such a character as to indicate that, in view of the great amount of traffic over the lines serving the two points in controversy, many others, and the public generally, would likewise be inconvenienced. We would not be justified in holding that, under the circumstances, the order of the Commission was arbitrary, capricious, and without reasonable basis. [See State ex rel. v. Public Service Commission, 129 S. W. (2d) 69.]

However, it is contended that the Commission acted arbitrarily in not permitting the bus companies already in the field to afford the required service.

The motion for rehearing filed before the Commission stresses *that the additional service is not necessary.* It makes no allegation that the Commission acted improperly in not permitting contestants to furnish the new service. Under such circumstances, the point is not preserved. [Sec. 5689, R. S. Mo. 1939; State ex rel. v. Public Service Commission, 100 S. W. (2d) 474; State ex rel. v. Public Service Commission, 111 S. W. (2d) 222.] In addition to this, we are of the opinion that the Commission did not act unreasonably or unlawfully in the premises. Priority in the field, while an element to be considered, is not, of itself, conclusive in the matter of granting or refusing a certificate, but this matter should be determined upon a consideration of which utility, under the peculiar facts and circumstances, will best serve the public. [Sec. 5724, R. S. Mo. 1939; State ex rel. Crown Coach Co. et al. v. Public Service Commission, 179 S. W. (2d) 123, decided by this court, but not yet reported (in State Report); The Hartonville Bus Line v. The Eagle Motor Coach Line, 326 Ill. 200.]

The Commission found "to require the presently authorized carriers serving between these points to rearrange time schedules to accommodate the convenience of the public as to time would necessitate the far-reaching adjustment in time schedules of the protestants' transstate operations". It would thus appear that protestants' busses are operated beyond both Springfield and Lebanon and that it would be impractical for the operators of them to rearrange their schedules so as to give the desired service. We cannot say that the order made by the Commission was unreasonable or unlawful in view of this and the other circsumstances.

However, it is claimed that the order was unreasonable and unlawful because the Commission, in another case, being the application of the Frisco Transportation Company to serve as a motor carrier of passengers, among other places, between Lebanon and Springfield, which was heard a short time before the present case, announced a policy contrary to that which it applied in this case. In that case, in refusing the certificate, the Commission took into consideration the existing carriers in the field, and held that, if additional service were required, it was the duty of the present operators in that case to render it. In view of the position taken by the Commission in the other case it is insisted that the Commission acted arbitrarily and unreasonably in the present case, in not permitting the existing carriers in this instance to provide the service. There is no merit in this contention, for the reason, if for no other, the evidence, facts and circumstances, in the other case, do not appear in this one. Terrill testified in that case that protestants' busses were running, between the points in controversy, at less than full capacity, but said at the hearing in this case that there was a difference in travel since that case was heard.

It is insisted that since the Commission now has the power to grant a temporary certificate by reason of a change in the law since this case was heard by it, (see Laws 1943, p. 861), we should remand the cause to the Commission for its consideration as to the propriety of issuing a temporary certificate; that, "That part of the service which Terrill purposed which will promote public convenience and necessity is that part which will be rendered during the war and not thereafter. The Commission based its finding upon an increased need due to gasoline rationing and tire rationing. This condition was brought about by the war. Absent this condition, the Commission infers that the certificate would not have been granted."

There is no such question raised (of course, it could not have been raised) in the motion for a rehearing filed before the Commission and, in addition to that, from what we said in State ex rel. Crown Coach Co. v. Public Service Commission, *supra*, there is no merit in the contention.

It is claimed that the Commission made no finding of any inadequacy in the present service and it gave no consideration as to what

328

effect the authorized service might have upon other transportation being rendered in respect to the fourteen schedules being operated by other carriers. In the Report and Order of the Commission it appears, beyond any question (although not expressly ruled), that such matters were considered by the Commission. [State ex rel. Crown Coach Co. v. Public Service Commission, *supra*.]

The judgment is affirmed. *Cave, J.,* concurs; *Shain, P. J.,* not sitting.