STATE of Missouri ex rel. MISSOURI PACIFIC FREIGHT TRANSPORT COMPANY, Appellant,

v.

PUBLIC SERVICE COMMISSION of Missouri, et al., Respondents.

No. 45569.

Supreme Court of Missouri.

Division No. 1.

Nov. 12, 1956.

George W. Holmes, Harold L. Harvey, St. Louis, for appellant.

Glenn D. Evans, Gen. Counsel, Frank J. Iuen, Asst. Gen. Counsel, Jefferson City, for respondents.

June R. Rose, Jefferson City, for intervenor-respondents.

VAN OSDOL, Commissioner.

The Missouri Pacific Freight Transport Company, relator, applied to the Pub-

lic Service Commission of Missouri for a modification and enlargement of relator's present authority to render freight-carrying service by motor vehicle between points or towns on the lines of the Missouri Pacific Railroad Company. Relator was seeking to remove the restriction in its present certificates of authority whereby its operation is limited to motor-carrier service from "depot to depot" between named points or towns, and to enlarge relator's operation by the procurance of authority to perform pickup and delivery service in connection with its line-haul or road-haul operation between such named points or towns. The Commission, after hearing, denied relator's application; and the Circuit Court's judgment, upon review, affirming the Commission's order denying relator's application was affirmed by the Kansas City Court of Appeals. State ex rel. Missouri Pacific Freight Transport Company v. Public Service Commission of Missouri, Mo.App., 288 S.W.2d 679. After opinion, the Kansas City Court of Appeals transferred the case to this court on the ground of the general interest and importance of questions involved in the case. This court determines the cause the same as on original appeal. Const. art. V, § 10, V.A.M.S.

The case involves some questions of the rights of an individual to engage in the business of a common carrier of property by motor vehicle on the highways of Missouri and of the sphere of the Public Service Commission's action in granting or denying authority to render such motor-carrier service in Commission's exercise of its powers and responsibilities in looking to the transportation needs of the public.

During the period from January 9, 1936, to March 12, 1941, Missouri Pacific Railroad Company (hereinafter referred to as "Railroad") applied for and received certificates authorizing it to transport freight as a common carrier by motor vehicle over the routes herein involved. The authority requested and granted specified transportation of freight between points or towns on Railroad's lines "from depot to depot," that is, Railroad's authority was specified as or limited to that of picking up freight by truck at Railroad's depots and moving it by truck to other depots on Railroad's lines. No authority was granted Railroad to pick up freight at a consignor's dock at any point or town and deliver same in a continuous operation to a consignee's dock at another point or town. Freight was to be collected by local draymen and delivered to Railroad's depot at a given point, there to be loaded onto Railroad's trucks; and freight delivered by Railroad's trucks to a depot was to be picked up by local draymen and delivered to the consignee's dock or store.

As an exemplification of the purpose of the applications and the orders granting Railroad the authority for depot-to-depot motor-carrier service, we quote Railroad's Assistant General Freight Agent who testified in behalf of Railroad in support of the application for one of Railroad's certificates granted in 1936, as follows, "The proposed operation is to relieve to a great extent the handling of this (l.c.l.) merchandise on local trains, expediting thereby the handling of carload movements. The truck transportation of the proposed operation will be in all respects similar to the local train operation in that the actual highway transportation will be conducted between stations; that is, from a Missouri Pacific station to a Missouri Pacific station, where the shipping and receiving public will have the opportunity of coming and getting their merchandise or delivering their own freight or utilizing the local pickup and delivery man who in every instance is a local contractor." Re Thompson, Trustee, Mo. Pac. R. R. Co., 23 Mo.P.S.C. 38, at page 42. Again, Railroad's General Superintendent of Transportation testified in support of another application for authority granted by Commission in 1936, as follows, "We don't want to go into the trucking business, we simply want to relieve these trains of this small amount of merchandise that is moving to

the local towns." Re Thompson, Trustee, Mo. Pac. R. R. Co., 23 Mo.P.S.C. 386, at page 389. This, and other like testimony introduced in support of Railroad's applications, prompted Commission during the years 1936 to 1941 to grant certificates authorizing the proposed motor-carrier service which was manifestly auxiliary or supplementary to Railroad's transportation of freight by rail. The service by truck, as stated, was specified as transportation between depots at named points on Railroad's lines. Railroad did not seek and was not granted authority to operate an independent "all-out" motor-carrier service which would have put Railroad's motor-carrier operation in direct competition with certificated common carriers of freight by truck then serving the areas involved.

However, in 1952, Railroad filed its application seeking authority from the Commission to render a pickup and delivery service in connection with the movement of its "over-the-road" motor equipment. The Commission was of the opinion that if the proposed enlargement or extension of Railroad's road-haul operation to include pickup and delivery were authorized it would be a new and different type of service, and that, in order to justify the granting of authority for such extended operation and service, it would be necessary for the applicant, Railroad, to prove public convenience and necessity; and the application was denied on the ground that Railroad had failed to prove public convenience and necessity. Re Thompson, Trustee, Mo. Pac. R. R. Co., 4 Mo.P.S.C.,N.S., 212. Railroad did not appeal.

Some time thereafter, Railroad transferred its certificates to relator, Missouri Pacific Freight Transport Company, a corporation wholly owned by and subsidiary to Railroad.

In relator's instant application, as in Railroad's application of 1952, it is sought to have the authority (formerly granted to the Railroad) modified, enlarged or broadened, as stated, so as to permit relator to pick up, transport between points or towns, and deliver freight in its over-the-road motor equipment directly from and to its customers, thereby entirely abandoning the use of Railroad's depot facilities insofar as motor-carried freight is concerned.

At the hearing upon the instant application, Commission announced (as Commission had ruled at the hearing upon the former application filed by Railroad in 1952) that relator was required to prove public convenience and necessity in order to be entitled to authority to perform and render the operation and service sought. Evidence was introduced tending to support and to refute the issue of public convenience and necessity. There was evidence that adequate service of the type proposed is now being rendered by other authorized common carriers of freight by truck to all the points involved (except two, Houstonia and Hughesville); and that, if relator should be granted the authority requested, it would have an adverse financial effect on motor carriers of freight presently authorized to serve the areas. The Commission denied the application as to all towns named therein (except as to Houstonia and Hughesville) on the ground that relator failed to prove public convenience and necessity.

We have examined the record of the hearing before the Commission and find that the Commission's order denying the application was supported by competent and substantial evidence upon the whole record. See Const. art. V, § 22; State ex rel. Rice v. Public Service Commission, 359 Mo. 109, 220 S.W.2d 61.

Upon this appeal, however, appellant-relator takes the position that Commission's order or award is unlawful, unjust and unreasonable. But relator does not contend Commission's conclusion (that public convenience and necessity was not shown) was not supported by competent and substantial evidence upon the whole record. Relator contends that no showing of public convenience and necessity could be lawfully required because, it is said, (1) a carrier au-

thorized to serve any community has inherent authority to perform pickup and delivery service in such community; (2) Commission has no statutory authority to prohibit a carrier from using its road-haul vehicles to perform such service; and (3) a restriction prohibiting a carrier from using its road-haul vehicles to perform such service is contrary to public policy in that it requires the carrier to use wasteful and slow methods of transportation.

Commission concedes that such authority as here sought may be and has been granted to rail carriers and that such authority could have been granted to relator's predecessor, Railroad, upon proof of public convenience and necessity. As stated, however, the record indicates Railroad specifically limited its request, originally, to depot-to-depot operations—operations supplementary or auxiliary to, or jointly with its rail transportation service; and Railroad was granted the specific authority it then requested upon proof of public convenience and necessity as to such depot-to-depot auxiliary or supplemental service Railroad specifically sought. We cannot know what order Commission would have entered had Railroad applied, during the years 1936 to 1941, for independent freight-carrying truck service (including pickups and deliveries) between the points or towns named in its certificates. An order granting authority for such all-out service during those years no doubt would have been dependent on a showing that public convenience and necessity would have been promoted thereby. But, as we have said, Railroad did not apply for such all-out service and no evidence was introduced tending to show or to refute the public's need for all-out service, independent of Railroad's rail transportation service, such as is now requested by relator in its instant application. Now it is plainly seen that, if relator were authorized to extend its operations so as to render all-out freight-carrying service by truck, its new and extended service would bring relator's operations into direct competition with motor carriers of freight presently authorized to serve the field.

We have the opinion that relator is mistaken in saying it has inherent authority to render pickup and delivery service by virtue of its authority to render depot-to-depot transportation service, auxiliary to Railroad's transportation service by rail. It would seem relator had and has no right to render any type or kind of common-carrier service, or part thereof, except under authority by the Commission granted upon Commission's determination of public convenience and necessity. The Commission has the responsibility of determining the public's need for common-carrier service sought and of considering a new, enlarged, extended or additional, and duplication of service would adversely affect presently authorized carrier service with resultant deterioration of efficiency in adequately supplying the transportation needs of the public. In the determination of these matters, the rights of an applicant, with respect to the issuance of a certificate of convenience and necessity, are considered subservient to the public interest and convenience. State ex rel. and to Use of Missouri Pac. R. Co. v. State Public Service Commission, 327 Mo. 249, 37 S.W.2d 576; State ex rel. Electric Co. of Missouri v. Atkinson, 275 Mo. 325, 204 S.W. 897; State ex rel. Missouri, Kansas & Oklahoma Coach Lines v. Public Service Commission, 238 Mo.App. 317, 179 S.W.2d 132; State ex rel. Interstate Transit Lines v. Public Service Commission, 234 Mo.App. 554, 132 S.W.2d 1082.

Commission's power (with regard to regulation of motor carriers as delegated to it by the legislature in the Motor Bus Regulation Act, L.1927, p. 402) carried with it the express correlative duty, before granting a certificate authorizing service by any motor carrier, of determining "that public convenience and necessity will be promoted by the creation of the service proposed, or any part thereof * * *." And in determining whether or not a certificate of convenience and necessity should be issued,

it was directed that Commission "shall give reasonable consideration to the transportation service being furnished by any railroad, street railway or motor carrier * * *." Section 4 of the Act, L.1927, p. 405. The requirement of a certificate of public convenience and necessity has been carried forward in subsequent amendatory statutes and revisions to § 390.050, A.L. 1951, p. 552 (renumbered § 390.051 by the reviser of statutes), § 390.051, RSMo 1955 Supp., V.A.M.S., which Section provides that (with some exceptions) no person shall engage in the business of a common carrier in intrastate commerce on any public highway in this state unless there is in force with respect to such carrier a certificate issued by the Commission authorizing such operations. Subparagraph 4 of § 390.051, supra, provides that a certificate shall be issued if "the commission shall find from the evidence that public convenience and necessity will be promoted, or that there is public need for the creation of the service proposed, or any part thereof, * * *." It is further provided in Subparagraph 5 of § 390.051, that in determining whether a certificate should be issued the Commission "shall give reasonable consideration to the transportation service being furnished by any common carrier by rail or motor vehicle and the effect which the proposed transportation service may have upon such carriers * * *." And in Subparagraph 6 it is provided that any certificate issued "shall specify the service to be rendered, whether such service, or any portion thereof, will be over regular or irregular routes, and the points or area to be served."

We observe, as did the Kansas City Court of Appeals, that it has been the Commission's uniform policy to require proof of public convenience and necessity for the specific type of "all-out" service now sought by applicant. It appears that heretofore applicants (including Railroad and its successor, relator) for certificates, as well as those protesting issuance thereof, have, by their course of conduct, tacitly approved Commission's authority and power to follow such a policy. While such an interpretation of authority by the Commission and by carriers is not binding on the courts, nevertheless, it is persuasive of the correctness of the procedure and practice followed. This policy is within and in fulfillment of Commission's powers and responsibilities delegated to and imposed upon it by statute. §§ 390.041 and 390.051, RSMo 1955 Supp., V.A.M.S. We have the further opinion that Commission, having resolved the issue of public convenience and necessity against applicant-relator, was correctly exercising the power and duty given and enjoined upon it by statute in denying relator's application.

Now Commission's regulatory powers and duties have been delegated to and enjoined upon it by the legislature in harmony and with the time-tested theory of regulatory law. State ex rel. and to Use of Missouri Pac. R. Co. v. State Public Service Commission, supra, 327 Mo. 249, 37 S.W.2d 576; State ex rel. Electric Co. of Missouri v. Atkinson, supra, 275 Mo. 325, 204 S.W. 897. In a case decided in 1929 after the enactment of the Motor Bus Regulation Act of 1927, supra, this court, quoting Pond on Public Utilities, 3d Ed., § 731, said, " 'The very purpose of regulation by state agencies is to secure uniformity of operating conditions among similar utilities and to save the economic waste that follows unregulated and useless duplication of service, which destroys itself and fails to furnish permanent satisfactory service at fair rates and cripples the existing necessary systems, commits waste and impairs the public service.' " Stat ex rel. Detroit-Chicago Motor Bus Co. v. Public Service Commission, 324 Mo. 270, 23 S.W.2d 115, 117. See also State ex rel. and to Use of Missouri Pac. R. Co. v. State Public Service Commission, supra, 327 Mo. 249, 37 S.W.2d 576; State ex rel. Missouri, Kansas & Oklahoma Coach Lines v. Public Service Commission, supra, 238 Mo.App. 317, 179 S.W.2d 132. See now Pond on Public Utilities, Vol. 3, 4th Ed., § 775, pp. 1552 et seq., where additionally it is said the policy of regulation upon

which our present commission plan is based is at once the reason and the justification for the holding of our courts that the regulation of an existing system of transportation, which is properly serving a given field, is to be preferred to competition among several independent systems. "The prime object and real purpose of commission control is to secure adequate sustained service for the public at the least possible cost, and to protect and conserve investments already made for this purpose. Experience has demonstrated beyond any question that competition among natural monopolies is wasteful economically and results finally in insufficient and unsatisfactory service and extravagant rates. * * * Anything which tends to cripple seriously or destroy an established system of transportation that is necessary to a community is not a convenience and necessity for the public and its introduction would be a handicap rather than a help ultimately in such a field."

Obviously, if relator were granted authority to operate as an all-out common carrier of freight by truck, its operations considered from the standpoint of relator, would be facilitated and expanded; its revenues would be to some extent increased, and its authority would be so broadened and its operations so extended as to become quite like those of independent common carriers of freight by truck presently rendering authorized service.

We have examined Railway Express Agency v. Pennsylvania Public Utility Commission, 134 Pa.Super. 405, 4 A.2d 176, 178, cited and greatly relied on by appellant-relator. The case is cited in support of relator's argument that progress and economy of operation demand an enlargement of its authority to include pickup and delivery service. In the Pennsylvania case the reviewing court was examining Utility Commission's determination of the extent of Express Agency's authority to serve as a common carrier. Utility Commission had prohibited Express Agency from trans-

porting express except by passenger train, which was the means or facility originally employed by Express Agency in transporting express, although more recently Express Agency had transported express by freight train. In remanding the case to the Utility Commission for the hearing of further evidence to ascertain the meaning of Express Agency's authority to engage in the " 'express transportation business,' " the reviewing court, in passing, expressed the opinion Express Agency was not limited to employing the precise facilities and modes of operation that were used in former days. "To so hold would prevent the adoption of many improvements in the public service without exceeding the powers originally granted." It was said, it would not require much argument to convince any court that " 'express transportation business' " is not limited to service that involves transportation of property on passenger trains. It seems to us the reviewing Superior Court was speaking only of efficient or practical means or facilities which could be used in performing an *authorized* service, that is, "without exceeding the powers originally granted." This is made clear by the court's remark "that a distinction must be made between the service to be accomplished and the means or facilities employed in performing it." 134 Pa.Super. at page 412, 4 A.2d at page 179. We think the Pennsylvania case is not helpful to us here.

As we have said, it is obvious that relator's operations would be enlarged and extended and facilitated to relator's benefit if it were granted the unrestricted authority it seeks. But, just as obviously, its new or extended operation with pickup and delivery service, if granted, would come into direct competition with and would be in some measure destructive of the revenues and the capacity of the motor carriers presently authorized to render efficient and economical service (which presently authorized motor carriers, according to the finding of the Commission, are now adequately serving the public in the field)—

this to the probable or at least possible ultimate detriment of motor-carrier service to the public whose interest is the primary objective of regulatory law. We agree with the Kansas City Court of Appeals that the question of public convenience and necessity was of prime importance in this case.

■■■ It is relator's further contention that Commission does not have jurisdiction over relator's operations within municipalities or commercial zones. In support of the contention, relator quotes the statute, § 390.031(9) RSMo 1955 Supp., V.A.M.S., exempting "transportation of passengers or property for hire wholly within a municipality, or between contiguous municipalities, or within a commercial zone" from stated Sections of Chapter 390, RSMo 1949 (1955 Supp.), V.A.M.S. Of course, pickup and delivery service, such as relator presently seeks, would be but an extension and a part of relator's continuous over-the-road operations between municipalities or commercial zones. Its continuous operations between commercial zones definitely would not be performed "within a commercial zone". And we cannot follow relator's argument that merely because the word "wholly" is not used in modifying the phrase "within a commercial zone", that the legislature intended to exempt transportation "within a commercial zone" from the stated provisions of Chapter 390, supra, where the transportation within the municipality or its commercial zone is a part of continuous over-the-road transportation to or from a point without a municipality and its commercial zone.

(In Commission's Report and Order, Commission alluded to relator's operations under other certificates authorizing relator to render motor-carrier service in eastern and southeastern Missouri. Relator asserts, Commission concedes, and we hold that the application and order in this case do not raise and determine issues pertaining to relator's operations in eastern and southeastern Missouri.)

The Circuit Court's judgment affirming Commission's order should be affirmed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.