STATE ex rel. OFFICE OF PUBLIC COUNSEL, Appellant,

v.

MISSOURI PUBLIC SERVICE COMMISSION, Respondent,

GTE, MCI, Intervenors,

Southwestern Bell Telephone Company, Respondent.

United Telephone Company of Missouri, MCI Telecommunications Corporation, Intervenors.

No. WD 48734.

Missouri Court of Appeals, Western District.

Aug. 9, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1994.

John R. Bakewell, Jefferson City, for appellant State ex rel. Office of Public Counsel.

David Woodsmall, Jefferson City, for respondent Mo. Public Service Com'n.

Ann Effinger Meulemah, Diana Harter, St. Louis, for respondent Southwestern Bell Telephone Co.

James C. Stroo, Wentzville, for intervenor GTE.

Carl J. Lumley, Clayton, for intervenor MCI.

Thomas Grimaldi, Overland Park, KS, for intervenor United Telephone Co. of Missouri.

Edward J. Cadieux, St. Louis, for intervenor MCI Telecommunications Corp.

Before HANNA, P.J., and
BRECKENRIDGE and ELLIS, JJ.

HANNA, Judge.

The issue in this appeal is whether the Report and Order of the Missouri Public Service Commission (Commission) approving Caller ID is lawful and reasonable.

On October 9, 1992, Southwestern Bell Telephone Company (Southwestern Bell) filed a tariff with the Commission introducing a new telecommunications service known as "Caller ID." The Missouri Office of the Public Counsel (OPC) requested hearings in the matter. Numerous parties were granted intervention, and an evidentiary hearing was held to determine whether Caller ID would be offered and, if so, in what form.

Caller ID is a service which provides its subscribers with the calling party's telephone number, the date and the time of the call. Subscribers must pay a monthly fee and must purchase a device upon which that information is displayed. When a call is received by the customer, the information about the calling party is transmitted after the first ring. Due to current technological limits, the telephone number of the calling party is not displayed if the call is from outside of the area where Caller ID is available, is made from a cellular phone, is operator assisted, is made using a credit card, is made from a party line, or is the second call received using Call Waiting. The purpose of Caller ID is to give its customers additional information to use when deciding whether to answer a call. Several parties, including domestic violence agencies and the Kansas City Board of Police Commissioners, opposed the provision of any Caller ID services due to privacy concerns. However, most of the testimony and exhibits focused on the attendant blocking options.

There are three basic forms of blocking: (1) no blocking; (2) per call blocking; and (3) per line blocking. When a call is blocked in some way by the calling party, the custom-

er's Caller ID device, instead of displaying the caller's telephone number, displays a "private" or "anonymous" message.

The no blocking option was advocated by intervenors representing individuals with disabilities. This option would allow the calling party's phone number to be transmitted in almost every circumstance. They argued that only by assuring minimal blocking can Caller ID reach its maximum usefulness and effectively aid people with certain disabilities to increase their ability to communicate with those who call them.

The second option is per call blocking. Under this option, the telephone number would be transmitted unless the calling party made a conscious decision to block the call. In order to block a particular call, the calling party must enter a three or four digit code before making the call (*67 for touch tone calls, and 1167 for rotary phone users). If the code is not entered, the telephone number will automatically be displayed on the Caller ID device. This form of blocking was advocated by Southwestern Bell and the other telephone companies involved.

The final option is per line blocking. When a call is made from a telephone with per line blocking, a private or anonymous message would automatically appear. If a caller wishes to unblock a particular call for some reason, the caller would first have to enter an unblocking code. This is known as per call unblocking. At the current state of technology, the code to unblock is the same as the per call blocking code—*67 or 1167. While there was evidence to indicate that a different unblocking code will soon be available, the Commission noted the inherent confusion caused by the current system using the same code to block and to unblock. Several parties, including the OPC, argued for the provision of the per line blocking option upon request to any customer, either for free or for a small fee.

The Commission had before it evidence of the options and the evidence supporting each. The Commission recognized the interests of customers who desire the service and the interests of privacy of the calling parties. Finding that there are situations when the blocking of calls is a legitimate need, the Commission decided that per call blocking would provide adequate protection to most calling parties. However, realizing the special needs of certain organizations to protect the safety of members of the public, the Commission ordered that free line blocking be made available to law enforcement agencies and domestic violence agencies and their staffs and volunteers.

The OPC appeals the decision of the Commission, and advocates that free line blocking be made available to all customers upon request. The OPC has raised four claims of error on the part of the Commission:[1] *(1)* the Commission's decision is not based on competent and substantial evidence; *(2)* line blocking is a telecommunications product or service which should be made available absent an unusually strong showing that it is not in the public interest; *(3)* line blocking maintains and advances the efficiency and availability of telecommunications services; and *(4)* the tariffs filed by Southwestern Bell are void because they do not designate Caller ID as competitive, noncompetitive or transitionally competitive.

On appeal, we review the decision of the Commission, not the judgment entered by the circuit court. *State ex rel. Public Water Supply Dist. No. 8 v. Public Serv. Comm'n*, 600 S.W.2d 147, 149 (Mo.App.1980). Our scope of review is limited to a determination of whether the Commission's order was lawful and reasonable, and based on substantial and competent evidence. *State ex rel. GTE North, Inc. v. Missouri Public Serv. Comm'n*, 835 S.W.2d 356, 361 (Mo.App. 1992). Factual issues decided by the Commission are presumed to be correct and, until the contrary is shown, we are obligated to sustain the Commission's order. *Id.* The Commission's order is presumptively valid

---

**1.** In Point I of its brief, the OPC argued that the Commission's decision created an unreasonable discrimination in violation of § 392.200.3, RSMo Supp.1993. However, at oral arguments, the OPC conceded that it had not included that issue

in its motion for rehearing before the Commission. Admitting that, pursuant to § 386.500.2, RSMo 1986, the issue was not properly preserved for appellate review, the OPC withdrew the point.

and the burden of disproving its validity is on the one attacking the order. *State ex rel. Util. Consumers Council, Inc. v. Public Serv. Comm'n*, 585 S.W.2d 41, 47 (Mo. banc 1979).

In its first point and its subparts, the OPC argues that the Commission's report and order which approved Caller ID without making free line blocking available upon request was based on speculation, opinion and conjecture, and not on competent and substantial evidence. The OPC specifically challenges four findings made by the Commission as not being based on substantial evidence: *(1)* that free line blocking is only necessary for the staff of law enforcement and crisis intervention organizations, and that per call blocking for all others will adequately protect the general public; *(2)* that free line blocking will substantially devalue Caller ID; *(3)* that per call unblocking will lead to unnecessary confusion; and *(4)* that it is important to have consistency of blocking options between Missouri and border states.

■ The respondents[2] argue that three out of the four subpoints, the exception being *(2)* regarding the devaluation of Caller ID, are not preserved for appellate review. Section 386.500.2, RSMo 1986, requires that the party challenging the Commission's order file a motion for rehearing before the Commission, setting forth "specifically the ground or grounds on which the applicant considers said order or decision to be unlawful, unjust or unreasonable." The statute further states that "[t]he applicant shall not in any court urge or rely on any ground not so set forth in its application for rehearing."

In its motion for rehearing, the OPC stated, "[T]he Commission's Report and Order is not based on competent and substantial evidence because it would be unreasonable and unlawful to find on this record: *1)* that free per-line blocking does not benefit the calling public and called public; *2)* that free per-line blocking devalues Caller ID too much; or *3)* that free per-line blocking harms the called public." The petition for writ of review before the Circuit Court of Cole County, Missouri, contains the same arguments. There is no mention of any customer confusion

which could arise from the use of one code to block and unblock, or of consistency among the border states. As subpoints 3 and 4 were not specifically raised in the motion for rehearing, the OPC is prohibited from raising these arguments in this court. *See State ex rel. Beaufort Transfer Co. v. Clark*, 504 S.W.2d 216, 220 (Mo.App.1973); *State ex rel. City of St. Louis v. Public Serv. Comm'n*, 326 Mo. 751, 34 S.W.2d 507, 511 (Mo.1930). The first two subpoints are addressed generally by the OPC and, for our purposes, are properly preserved for appellate review.

■ First, the OPC challenges the Commission's finding that free line blocking is necessary *only* for law enforcement agencies and domestic violence agencies. The OPC argues that it established that other people need to communicate confidentially, such as doctors, lawyers, or other professionals and service providers. Failure to provide them with free line blocking will have an increased risk that a return call will reveal their activities to others in the home or workplace, and that abuse victims, lawyers, doctors, other professionals, and citizens will be harassed or traced by those who intend to harm them as the result of accidental transmission of their telephone numbers. The OPC argues that the Commission rejected consistent, unrebutted and unimpeached testimony by various witnesses that the public interest requires that per line blocking be universally available. We review to determine whether the Commission's findings were reasonable and based on competent and substantial evidence, or whether they were, as the OPC argues, arbitrary and capricious.

In its report, the Commission noted early on that there was no compromise that would satisfy all of the parties, since the various proposals ranged from no blocking at all to universal line blocking. The Commission recognized the need to balance the interests of all parties. The Commission noted the results of Southwestern Bell's test of Caller ID in Oklahoma, which revealed that only one-twentieth of one percent of calls were blocked in the highest month. There was

---

**2.** Both Southwestern Bell and the Commission are respondents and have submitted briefs in this

appeal. Because their positions are the same, we refer to them collectively as respondents.

also evidence of a similar test in Kentucky with the same results. These results tend to minimize the OPC's assertion that per line blocking was desired by the general public. Further, while the Commission noted that there are situations in which callers do not want to reveal their telephone numbers to the called party, it felt that per call blocking was sufficient to serve those needs, especially since phones are available which will automatically dial the blocking code when each call is made. In making its determination that "[Southwestern Bell's] analysis properly balances the interests of customers for the [Caller ID] service and provides the proper balance of privacy for the calling party," the Commission did not ignore the evidence propounded by the OPC. Rather, it considered all the evidence and provided a reasonable solution which best met the needs of all parties. It based its decision on several findings supported by the evidence. There was substantial and competent evidence to support the Commission's finding that per call blocking serves the public interest.

■ In the second subpoint, the OPC challenges the Commission's finding that free line blocking will substantially devalue Caller ID. The OPC claims that "testimony by Southwestern Bell's own witnesses establishes that with free line blocking on request, Caller ID is projected to pay for itself in an acceptable time frame, and the Commission was not entitled to ignore this admission."

The contested fact finding by the Commission states:

In addition, per-line blocking would reduce the value of Caller ID service. The evidence is that customers discontinue Caller ID service because of the number of calls for which the numbers are not displayed. If the service is in the public interest, it should be provided in a manner that allows it to be utilized to its maximum benefit. Per-line blocking would detract substantially from the service....

It is clear that the Commission, in discussing the devaluation of Caller ID, was concerned with more than monetary reward to Southwestern Bell. Rather, it addressed the value of Caller ID to the *customers* and to the *public* as a whole. The testimony of

Southwestern Bell witness Lisa Wilder established that per line blocking would reduce the overall public value of Caller ID as a deterrent to annoying or harassing phone calls, and would decrease the value to individual subscribers since they would no longer be able to tell if a call was deliberately blocked. Finally, Ms. Wilder testified that the main reason people disconnect the Caller ID service is because they receive too many calls for which a number is not delivered. Southwestern Bell estimates that if free line blocking is available, the number of subscribers could be reduced by as much as 35%, from 11% of Southwestern Bell customers to 7.7%.

OPC contends that the devaluation of Caller ID would not result in a substantial monetary loss to Southwestern Bell. It argues that the reduction in value was controverted by Southwestern Bell witness William Bailey's testimony that even with free per line blocking, Caller ID will still earn a profit of $1 million at the end of five years. However, without the line blocking, the witness estimated that Southwestern Bell would make over $4 million in the same five-year period. Even though Southwestern Bell still stands to make a profit, there would be a substantial decrease in profits if line blocking were to be implemented. There was substantial and competent evidence to support the Commission's finding that universal per line blocking would substantially devalue Caller ID to the public and monetarily, to Southwestern Bell.

■ Next, the OPC argues that the Commission erred in approving Caller ID without free line blocking because line blocking is a telecommunications product or service and, therefore, the Commission is required by § 392.530.1(3), RSMo Supp.1993, to "[p]romote diversity in the supply of telecommunications services and products," absent an unusually strong showing that the new product or service is not in the public interest. The OPC concedes that the statutory requirement is not applicable to every new service. Respondents argue that line blocking is not a "telecommunications service" within the meaning of the statute. Rather, it is merely an option to the broader service,

Caller ID. Therefore, the preference for new services as stated in § 392.530.1(3) does not apply to line blocking.

Whether the preference for diversity in new telecommunications services applies to line blocking depends on whether line blocking can properly be classified as a "telecommunications service." Section 386.020(44), RSMo Supp.1993, states as follows:

(44) **"Telecommunications service"**, the transmission of information by wire, radio, optical cable, electronic impulses, or other similar means. As used in this definition, **"information"** means knowledge or intelligence represented by any form of writing, signs, signals, pictures, sounds, or any other symbols.

The OPC argues that line blocking is a telecommunications service because it transmits information by wire. The information it transmits is a message to the appropriate central office that the sender's number is not to be revealed. That office then transmits information, an anonymous code, to the called party.

Line blocking is not a telecommunications service in and of itself, but rather is an option tied to the Caller ID service. While one does not have to be a subscriber of Caller ID to utilize line blocking, without Caller ID there would be no need or market for line blocking. The transmission of the code indicating the caller's desire to block the telephone number and the transmission of the anonymous signal to the Caller ID device is more appropriately considered a component of Caller ID rather than line blocking.

In its final point, the OPC claims that the Commission erred in approving Caller ID because Southwestern Bell's Caller ID tariffs are null and void since they failed to designate the new service as competitive, transitionally competitive, or noncompetitive as required by § 392.220.4, RSMo Supp.1993. Section 392.220.4 states in part: "Upon proposing a rate or charge for a telecommunications service which has not previously been provided by a telecommunications company to its Missouri customers, the offeror ... must identify that service as being noncompetitive, transitionally competitive or compet-

itive." Section 392.480.1, RSMo Supp.1993, also provides that any tariff filed shall indicate whether the service to be offered or provided is competitive, transitionally competitive, or noncompetitive. The OPC argues that these statutory provisions must be strictly complied with, and since Southwestern Bell failed to classify the new service, Caller ID, the tariffs are null and void.

Respondents argue that the tariffs are not void because the statutes have a default provision in the event that no classification is made. Section 392.480.2, RSMo Supp.1993, states, "All telecommunications services not properly classified as competitive or transitionally competitive shall be classified as noncompetitive telecommunications service." The reason behind the classification system is to determine to what level of government regulation a new telecommunications service is subject. Southwestern Bell has conceded all along that the Caller ID service is noncompetitive and subject to the highest level of regulation.

There has been no harm to any party caused by Southwestern Bell's failure to list the proper classification, especially in light of Southwestern Bell's admission that Caller ID is noncompetitive. Further, there is a specific procedure set out in § 392.361.1, RSMo Supp.1993, which the OPC may follow in order to initiate proceedings by petition if the OPC feels the noncompetitive classification is erroneous. The tariffs submitted by Southwestern Bell are not null and void.

Judgment affirmed.

All concur.