STATE of Missouri ex rel. PUBLIC WATER SUPPLY DISTRICT NO. 8 OF JEFFERSON COUNTY, Missouri, Respondent,

v.

PUBLIC SERVICE COMMISSION of the State of Missouri, Appellant,

and

Cedar Hill Estates Water Company, Appellant.

No. WD 30771.

Missouri Court of Appeals, Western District.

May 5, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 9, 1980.

Application to Transfer Denied July 15, 1980.

Steve Ellinger, L. Russell Mitten, II, Paul W. Phillips and Rory Ellinger, Jefferson City, for appellant Public Service Commission.

Charles F. Dufour of Yarbrough & Dufour, Clayton, for appellant Cedar Hill Estates Water Co., Inc.

John W. Howald of Thurman, Nixon, Smith, Howald, Weber & Bowles, Hillsboro, for respondent.

Brief amicus curiae filed on behalf of Missouri Rural Water Association by James C. Butcher, Columbia.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This is an appeal from a circuit court judgment reversing an order of the Missouri Public Service Commission which had granted a certificate of convenience and necessity to construct and operate a water utility. The judgment of the circuit court is reversed and remanded with instructions.

■ The proceedings and orders of the Missouri Public Service Commission are administrative by nature. Authority for, and the prescribed standard of, review of such proceedings is found within Mo.Const. Art. V, § 18. Circuit Court review is authorized by § 386.510, RSMo 1978, with appellate review being authorized by § 386.540, RSMo 1978. We review the decision of the P.S.C., not the judgment of the circuit court, see *Ingram v. Civil Service Commission*, 584 S.W.2d 633 (Mo.App.1979).

Upon inception, this cause involved only appellant, Cedar Hill Estates Water Company, Inc. (hereinafter referred to as Cedar) as applicant for a certificate of convenience and necessity and appellant, Public Service Commission of the State of Missouri (hereinafter referred to as the P.S.C.). Respondent, Public Water Supply District No. 8 of Jefferson County (hereinafter referred to as the District) was permitted to intervene in the hearing upon Cedar's application before the P.S.C.

Upon the original finding by the P.S.C. approving the application of Cedar, the District filed a petition for review, becoming relator in said proceedings. The circuit court reversed the order of the P.S.C. Upon appeal, leave was granted to the Missouri Rural Water Association to file its brief amicus curiae.

The P.S.C. and Cedar are joined as appellants and the following arguments are presented to this court. In summary, these arguments are: (1) there was substantial and competent evidence that the P.S.C. did not violate the spirit of the P.S.C. law and did not promote cut-throat competition because the granting by the P.S.C. of the certificate of convenience and necessity was a legitimate exercise of its discretionary authority to allocate utility service territory; (2) there was substantial and competent evidence that the P.S.C. did not misinterpret the term "public" as that term relates to certificates of convenience and necessity, because the law empowers the P.S.C. to determine what is necessary or convenient for public service; (3) there was substantial and competent evidence that the P.S.C. did not misapply the law to the facts upon failure to consider the impact upon the District and its customers, because the P.S.C.'s order evidenced the consideration of economic impact upon the District and further constituted proper application of the evidence to the law; (4) there was substantial and competent evidence showing that the water service by the District to the mobile home park was inadequate as to quality, quantity or pressure of water furnished and such finding did not overlook the inadequacy of the District's service based upon the District's inability to serve the entire certificated area, the high rates and the unbusinesslike and unreasonable manner in which the District conducted its operations; (5) there was substantial and competent evidence that there was indication that water supply to the certificated area was beyond the capacity of the District, because the evidence revealed a current inability by the

District to provide service within the certificated area; (6) there was substantial and competent evidence that the District did not have water mains within the certificated area because the evidence did not support such finding; (7) there was substantial and competent evidence to support the finding that the District did not have the ability to provide water service within the certificated area, because the evidence did support such a finding and (8) there was substantial and competent evidence that the P.S.C.'s order was not contrary to both law and fact as it would not result in duplication of facilities because the evidence did support such a finding and further, the law vests the P.S.C. with exclusive discretion to choose between monopoly and regulated competition.

Respondent District, in its brief and argument, refutes the alleged argument of appellant and premises the support for its position, alleging the record does not support the P.S.C.'s findings and order upon substantial and competent evidence.

The brief amicus curiae presents to this court one point. This point argues that the P.S.C. erred in its finding that service was not already available and being rendered to the proposed certificated area, and that public convenience and necessity did require the issue of a certificate because it would only result in wasteful duplication of facilities and would encourage unnecessary competition. By way of a reply brief, appellants argue that respondent erroneously argues that the P.S.C. acted unreasonably in granting the certificate and by doing so, afforded no territorial protection to the District. Appellants, in their reply brief, also argue that Title 7 U.S.C. § 1926(b) is not applicable to the instant case.

Facts pertinent to the instant case span the greater portion of a decade. The area in question is some 250 acres located in an unincorporated portion of Jefferson County. This tract is bordered on the east by a one-half mile strip of Highway 30. The south and west border is the Big River. The tract composes approximately a one-half to three-quarter square mile area. In addition to this prescribed size and boundary identification, the tract lies in the southwest portion of an eleven square mile area, which comprises the area of District No. 8. This 250 acre tract equals about 5% of the District's total square mile area.

The particular tract is under development by appellant Norman Goad. Mr. Goad and his wife are owners of the Goad Construction Company and are the principal stockholders of Cedar. Development consists to date of a mobile home park (built in 1971), which contains 94 mobile home pads. In addition, there is a 21-lot industrial park, a 47-house subdivision and 16 commercial lots. Three of the commercial lots receive water from the District and are excluded from the area to be certificated. Some 70–80 acres remain undeveloped. The Goads have a residence on the tract, and there is also a lumber company, a florist, a swimming pool supply warehouse, a ready-mix concrete operation and a medical building, which has one dentist as an occupant.

Water to this tract, where supplied at all, is provided by deep wells. The District supplies water on the west side of Highway 30 only to the three business locations excepted in appellant Cedar's application and the medical building. Service to these locations was sought and secured from the District because of the continual dispute between the parties.

Procedurally, the instant case originated with the P.S.C. upon application by Cedar for a certificate of convenience and necessity to become a regulated water public utility to provide water service to the tract in question. The District was permitted to intervene in the hearing upon the application. It should be noted that prior to the hearing on the application, the District had filed a complaint with the P.S.C. alleging Cedar was unlawfully providing service as an unregulated water utility. The P.S.C. dismissed the complaint, concluding at the time that Cedar was supplying water only to its own customers (the mobile home park), and hence was not operating as a water utility company.

The history of this matter is important to the disposition of this appeal and is best provided by the testimony of the witnesses. Cedar was incorporated as a water utility in 1977 by Norman Goad and his wife. The record establishes the Goads could properly finance such a water utility and that Mr. Goad was experienced in the operation of utility services and familiar with the regulatory function of the P.S.C. Cedar provides sewer service to the area. Mr. Goad testified that in 1973, Cedar Hills Water Co. provided water to the tract. The water supply came from a four-inch main along Highway 30. Goad's mobile home park received water through a 1½ inch meter.

In 1973, pursuant to Chapter 247, RSMo 1969, the District was formed and the District bought Cedar Hills Water Co.[1]

Mr. Goad testified that when the District took over the water supply, rates rose and he tried to negotiate a lower bulk rate. He stated the District refused to negotiate. Occurring simultaneously with these events was further construction and development within the tract area. When Mr. Goad's negotiations failed, he proceeded to hook up a 6-inch line to the District's line for service to the mobile home park. This hook-up was unauthorized, and the District sought and obtained a mandatory injunction for severance of this hookup. The District exclaimed that such hook-ups do "irreparable damage" to the remainder of the District's system. A hearing was held in February, 1976, which included discussion of the bulk rate and severance of the line. The day he was served with notice of the injunction, Mr. Goad severed the line. Mr. Goad concluded that the refusal to negotiate the rate and the demand for severance of the line were unreasonable actions by the District.

In addition to the bulk rate question and the line severance, discussion of and objection to "blanket easements" required by the District in providing service also passed between the parties.

The evidence shows that following the line severance, Mr. Goad secured permits from the Missouri Department of Natural Resources and constructed a well and stand pipe to supply water to his mobile home park. This service has continued since May, 1977. Mr. Goad testified he favored a regulated water utility over the District. He further stated there was presently a great need for water and that future development would create a greater demand for water. Such a demand would include the need for fire protection, which is not now provided. He proposed to offer fire protection and water service at rates lower than the District. He also exclaimed an arbitrariness and unreasonableness by the District over the issue.

Applicant then called four witnesses, Clyde Blake, Phil Rush, Jean Verdier and Gilbert May, who hold property interests within the tract. These individuals favored the water company over the District. Mr. Blake related his concern over fire protection and stated he felt the District had been unfair in requiring the line to be severed and that he would drill his own well before dealing with the District. Mr. Rush testified that he favored the water company because he wanted regulation provided by the P.S.C. Ms. Verdier testified she favored the water company but intended to remain a resident in the mobile home park, regardless if water was supplied by the District or the Company. Mr. May is the vice-president of a local mortuary and stated he had several contacts with the District and found the District to be unfair and unreasonable when dealing with it.

The foregoing testimony was followed by that of two former employees of the District. These former employees were Thomas Stosberg and Muriel Griggs. Mr. Stosberg testified that a particular pump part had ceased to function. As a result, two employees flew to Rhode Island and spent two days in acquiring the part. He further testified the District manager used District

1. Reference here is made to the old Cedar Hills Water Co. and should not be confused with applicant Cedar Hills Estate Water Co., Inc.

time to keep the records of a local church and to balance the checkbook of a construction company owned by the manager's brother-in-law. He testified that the manager's brother-in-law made use of a back-hoe owned by the District and that the husband of the manager had also used the back-hoe at their home. It was the contention of this witness that these incidents, plus the absence of the manager, led to higher rates in the District for water users.

Mrs. Griggs testified she had been fired by the District and was replaced by the manager's sister. She testified to the Rhode Island flight, the church books, the working of the books of the construction company owned by the manager's brother-in-law, the use of the back-hoe, the continued involvement of the manager in water associations and her absence because of such association. She stated that the District served 637 users and in her opinion, a salary of $1,000 per month was too much to pay a manager.

The evidence in support of the application concluded with the testimony of Mr. J. C. Stevens. This witness is a civil engineer. He was the head of the firm which designed the District. He also had prepared the feasibility study for the water company. The feasibility study for Cedar included a map and description of the area, the names of the property owners, and proposed rates, rules and regulations for the operation of Cedar. He testified a well, well structure, controls, pump and stand pipe were in existence and approved by permit from the Department of Natural Resources.

Mr. Stevens testified that in order to serve the area, the District would need to install a much larger water main across Highway 30. It was the opinion of this witness that the District could not provide fire protection for the tract. His conclusion was based upon the District's claim that hooking a 6-inch main onto the District's facilities would place the remainder of the District's system in jeopardy. Mr. Stevens had attended the earlier meeting when the severance of the line had been discussed. It was his opinion that "capping" the line would have been sufficient, and he tried to persuade appellant Goad to wait, thinking the District would act in a more reasonable manner to achieve water service for the tract. He changed his mind when the District refused to negotiate different rates and demanded severance of the line. He stated that the award of the certificate would not adversely affect the District because the District's feasibility study did not include this area, which at the time of the study, remained undeveloped. Development at this time was not even contemplated.

None of the witnesses on behalf of Cedar had ever requested or had been refused water service from the District.

The District presented three witnesses, Adolph Herberts, Joyce Miller and Paul Lynn.

Mr. Herberts, a civil engineer, presented a map representing the District's existing facilities. He stated that by additions to and the utilization of the existing system, the District could provide the needs as outlined by Cedar's feasibility study. It was his opinion that an additional 2,500 feet of 6-inch pipe would be needed at a cost of $25,000 and could be placed underneath Highway 30 in an existing encasement. The encasement, the evidence shows, was placed there in 1972, and controverted testimony exists on its current serviceability. Mr. Herberts estimated that meter installments would cost $100 per customer. He predicted a yearly revenue for the District of $8,000. He further stated that he had made no studies to determine whether the District would actually make money if it were to service the tract. He claimed that development of this tract was in consideration at the inception of the District's feasibility study. He claimed Mr. Goad had shown him a preliminary plat, stating that the mobile home park had been partially complete at this time. On the question of the line severance, Mr. Herberts testified that the District had no knowledge of the manner, method or materials used in hooking up the line and that the District therefore was unable to positively know whether

such connection would not create malfunctions within the District's system.

The testimony for the District continued with that of Joyce Miller, Manager of the District. She mentioned the trip to Rhode Island, stating that time and the unavailability of the particular part resulted in the flight. She stated that the manufacturer took time to explain how the new part would work, and how this would enable her to repair the part in most cases of malfunction. She testified she had worked on the books of the church and her brother-in-law's construction company, but in those instances, her total time for the District exceeded a 40-hour week and both representatives of the church and her brother-in-law had rendered services to the District for which neither were reimbursed. She explained that her participation in various water associations enabled her to better understand and resolve problems faced by the District. She concluded by declaring the District capable of service for the tract, and that to grant the certificate would take away potential customers from the District. She stated this action would result in higher rates for users.

The District concluded its evidence with the testimony of Paul Lynn, President of the District Board. It was his opinion that if the certificate was granted, it would have an adverse effect on the users in the District. He also testified the District was capable of providing the service, and to grant the certificate would take away potential customers from the District.

Following the hearing upon the application, the P.S.C. made a lengthy narrative finding and conclusion which, in summary, declared the following: The need for water service in the area is imminent, and that such service as proposed by the applicant (Cedar) is necessary and convenient for such public services. The P.S.C. is empowered to favor regulated competition over regulated monopoly. The District's facilities are not presently adequate to serve the area and therefore, new facilities would not duplicate existing facilities. Cedar and the District are equally suitable to serve the proposed area, and the residents of the area are entitled to the service they desire.

The P.S.C. made its order, granting the certificate of convenience and necessity effective February 28, 1978. The District filed a petition for review on April 5, 1978. The circuit court overruled the order of the P.S.C. on February 14, 1979.

A motion to stay the circuit court's judgment was filed, and after a hearing, the motion was denied. This appeal followed.

As pointed out, review of this matter is made pursuant to Mo.Const. Art. V, § 18 and §§ 386.510 and 386.540, RSMo 1978. Two matters are subject to this court's consideration, first, whether the P.S.C.'s order was authorized by law, and second, whether such order was supported by substantial and competent evidence.

The order in the instant case is found to have been authorized by the statutory law of our state under Chapter 393, RSMo 1978 and more specifically under § 393.170(3), RSMo 1978, which reads:

"The Commission shall have the power to grant the permission (to construct and operate a water system) whenever it shall after due hearing determine that such construction or such exercise of the right, privilege or franchise is necessary or convenient for the public service."

This court is not permitted to substitute its judgment for that of the P.S.C. and it is not required to defer to the order in determining the lawfulness of the order. Rather, the order must be lawful and reasonable and be based upon substantial and competent evidence, see *State ex rel. Utility Consumers Council of Missouri, Inc. v. Public Service Commission*, 585 S.W.2d 41, 47 (Mo.banc 1979); *State ex rel. Dyer v. Public Service Commission*, 341 S.W.2d 795 (Mo. 1960), cert. denied 366 U.S. 924, 81 S.Ct. 1351, 6 L.Ed.2d 384 (1961); *State ex rel. Chicago, Rock Island & Pacific Railroad Co.*, 312 S.W.2d 791, 796 (Mo.banc 1958).

The burden of proving invalidity of a P.S.C. order falls upon the party attacking the order. Such order is initially considered prima facie correct, see *State ex rel.*

*Chicago, Rock Island and Pacific Railroad Co., supra*; *State ex rel. Fee Fee Trunk Sewer, Inc. v. Public Service Commission*, 550 S.W.2d 945, 946 (Mo.App.1977) and §§ 386.270 and 386.430, RSMo 1978.

The rule relating to lawfulness and reasonableness has been broadly stated as follows:

"If there is competent and substantial evidence on the whole record that the certificate of convenience and necessity awarded to (the Water Company) was 'necessary and convenient for the public service', then the Commission's order in granting the certificate was both reasonable and lawful. If the opposite be true, then the order of the Commission granting the certificate of authority was both unreasonable and unlawful." *State ex rel. Ozark Electric Cooperative v. Public Service Commission*, 527 S.W.2d 390, 392 (Mo.App.1975).

The determination of what is necessary and convenient has long been, and continues to be, a matter of debate. From analysis of court decisions on this subject, the general purpose of what is necessary and convenient encompasses regulated monopoly for destructive competition, prevention of undesirable competition and prevention of duplication of service. The underlying public interest is and remains the controlling concern, because cut-throat competition is destructive and the public is the ultimate party which pays for such destructive competition, see *State ex rel. City of Sikeston v. Public Service Commission*, 82 S.W.2d 105, 109–110 (Mo.1935); *State ex rel. Crown Coach Co. v. Public Service Commission*, 179 S.W.2d 123, 126 (Mo.App.1944). Early in this century, the premise for this principle was announced in *State ex rel. Electric Company of Missouri v. Atkinson*, 275 Mo. 325, 204 S.W. 897 (Mo. banc 1918), wherein the State Supreme Court declared:

"This is an era in which we, in a large measure if not fully, realize a necessity for the conservation of energy and of natural resources. Such conservation is better secured by the regulation of public utilities than by their duplication . .

'the requirement of a finding of necessity, as well as of public convenience, further implies that if another utility is adequately rendering the service proposed, or is able and willing or may be required to do so, then the necessity would not exist and the certificate should be refused.' "

Further, before a competing utility would be permitted to enter an area, the courts required,

"Public convenience and necessity is not proven merely by the desire for other facilities. It must be clearly shown there is failure, breakdown, incompleteness or inadequacy in the existing regulated facilities in order to prove the public convenience and necessity requiring the issuance of another certificate. The fact that one does not desire to use present available service does not warrant placing in the field a competing utility." *People's Telephone Exchange v. Public Service Commission*, 186 S.W.2d 531, 536 (Mo.App.1945).

It needs to be pointed out that it is within the discretion of the P.S.C. to determine when the evidence indicates the public interest will be served in the award of a certificate to a competing utility, see *State ex rel. Beaufort Transfer Co. v. Clark*, 504 S.W.2d 216, 219 (Mo.App.1973). That discretion and the exercise however are not absolute and are subject to a review by the courts for determining whether orders of the P.S.C. are lawful and reasonable.

The term "necessity" has been held not to mean essentially or absolutely indispensable, rather, it requires the evidence show that additional service be an improvement justifying the cost and the inconvenience to the public as a result of the lack of the utility, and that such evidence is sufficient to amount to showing the lack thereof would amount to a necessity, see *State ex rel. Beaufort Transfer Co. v. Clark, supra*.

The policy favoring regulated monopoly over destructive competition rests upon the public interest. It is not an absolute rule, but is applied relative to the particular facts of each case, see *State ex rel.*

*Electric Company of Missouri v. Atkinson, supra.* That deference to P.S.C. discretion appears great in Missouri, see *Ozark Electric Cooperative v. Public Service Commission* and *People's Telephone Exchange v. Public Service Commission, supra.* That the phrase "necessary or convenient for the public service" is premised upon the best public interest being served by "adequate facilities", see *Ozark Electric Cooperative v. Public Service Commission, supra.*

By its brief amicus curiae, the Missouri Rural Water Association presents the law of other jurisdictions. The presentment reflects two approaches to the question. The first approach is that preference given an existing utility is merely a guideline for the Commission. The controlling factor is the public interest and such interest is a matter of policy to be determined by the Commission. It is suggested that such an approach applies a balancing process, giving weight to adequacy of service and desirability of competition. It is suggested by such an approach that adequacy or inadequacy of a facility alone is not determinative, see *In re Mason*, 134 N.J.Super. 500, 342 A.2d 219 (1975); *Keith v. Bay Springs Telephone Company*, 168 So.2d 728 (Miss.1964), and *Utah Light and Traction Company v. Public Service Commission*, 118 P.2d 683 (Utah 1941). See also 73 C.J.S. *Public Utilities* § 42 (1951).

The alternative approach is premised upon an existing facility not rendering adequate service. This approach includes the opportunity for the existing facility to provide the requested service, and it requires the requesting facility to show it can provide better service than the existing facility. This is the prevailing rule in Illinois, although the decision contained a dissent urging the matter should be one of policy left to the Commission's discretion, see *Chicago and West Towns Railways v. Illinois Commerce Commission*, 383 Ill. 20, 48 N.E.2d 320 (1943).

Missouri authority tends to uphold the first approach or the application of the balancing test to the issue of allowing competition. *Ozark Electric Cooperative v. Public Service Commission, supra*, holds that adequacy of facilities is not an exclusive criterion. *State ex rel. Electric Company of Missouri v. Atkinson, supra*, points out that the policy is to protect the public and directs the concern of the public interest to the question of destructive competition. It can be further concluded that our own state's policy against competition is a flexible one created to protect the public first and concerning itself with the existing utility only in an incidental manner.

It is against the foregoing composite that the evidence of the instant case is reviewed, and disposition of this appeal is entered.

As regards appellants alleged errors and arguments herein, the record shows the District has a four-inch water main which runs along one-third of the eastern border of the proposed tract. There was evidence that fire protection was not available to the proposed area. The evidence, through various witnesses, questioned the reasonableness as to the management of the District. The evidence revealed that 2,500 feet of new or additional pipe was necessary at an expected cost of $25,000. The evidence was controverted as to whether the encasement to run pipe under Highway 30 was usable and if not, it would have to be replaced or some other method employed. The evidence supports the conclusion that the District Board does not respond to claims, suggestions and an alleged unreasonable attitude toward the public. The evidence reveals the District does not presently possess facilities to provide adequate service to the proposed tract. The District has a four-inch main and previously had served the mobile home park through a one and one-half inch service meter. No fire protection services are provided or can be provided by the District without major additions to the District's facility.

The evidence clearly shows the District cannot presently provide adequate fire protection service or extended water service without additional facilities. The evidence supports the conclusion that prior service to the mobile home park was not adequate. The evidence shows the services presently

needed and those projected for the future are beyond the capacity of the District.

The District serves one tenant (a dentist) in the medical building and that service was extended because of the undue delay in this controversy. The District serves three other locations, but the evidence shows these locations are exempted from the application.

The evidence supports a conclusion that the District has acted in an unreasonable manner over the issue of requested service to the proposed area. Only after these proceedings were initiated did the District indicate any willingness to consider the area. Court action was taken to require severance of the 6-inch line to the proposed area from the District supply. The evidence reflects an unwillingness by the District to consider the application of bulk rates for the mobile home park. The evidence further shows such a controversy exists between proposed users and the District that it can be properly inferred from such evidence that service to and for the area would not be made available in the immediate future.

In conclusion therefore, the ultimate interest is that interest of the public as a whole, see 73 C.J.S. *Public Utilities* § 42(a) (1951) and the authority cited above, and not the potential hardship to individuals in the District herein. The P.S.C. was correct in its conclusion that such potential hardship is not a requirement for the issuance of a certificate. Any harm, and the evidence herein does not sufficiently prove any harm, to the District, as opposed to the public interest, is only of secondary importance. The question is one of public need for water, that is how that water can best be provided at the lowest rate to the user as opposed to destructive competition for the District.

The evidence was substantial and competent enough to support the P.S.C.'s conclusion that there is a growing need for water service inclusive of fire protection. The evidence was substantial and competent enough to support the P.S.C.'s conclu-

sion that there would be no duplication of facilities. That leaves only the issue of competition. The evidence shows Mr. Goad had experience in the operation of utility services. Cedar currently provides the water within the proposed area. The Goads are possessed of adequate financial resources to expand and operate Cedar as the needs of its customers dictate. The evidence supports the P.S.C.'s finding of dissatisfaction with the District by the users, arbitrary policy of the District and the preference by the users of a regulated company over a nonregulated source of water.

The evidence further shows that the issuance of the certificate would have minimal, if any, impact on the District. The District is not equipped to provide the service, and expansion costing upwards of $25,000 for an anticipated revenue income of $8,000 would have to be completed.

The contention by the District that issuance of the certificate would be competitively destructive ignored the possibility that water supply to residents of the mobile home park might continue in their capacity as tenants only. The evidence shows Mr. Goad intends to reduce the monthly mobile home pad rental in direct proportion to the cost for water. The District's contention also ignores the testimony of at least one witness, that rather than to secure service from the District, that person would dig his own well. The District made no studies to determine if it would make money by serving an area which only comprises some 5% of the total 11 square mile area of the District.

As was pointed out at the inception of this opinion, this court is bound to review this case upon the whole record and to make determination if the P.S.C.'s order is supported by competent and substantial evidence. No other rule is either applicable or permissible and this court cannot substitute its judgment in lieu of that of the P.S.C.

The evidence is competent and substantial enough to support the order of the P.S.C. upon the whole record. That evidence reveals that there is a need for water service in the proposed area, that such ser-

vice is not currently provided by another utility and that the surrounding area is being served by the District. That evidence shows Cedar has been providing water service for the area since May of 1977, that Cedar offers to construct and maintain requested service, that Cedar is possessed of sufficient financial means to expand and provide service for the area and that potential users prefer the regulated company service over service from the District.

The evidence further reveals that potential revenues claimed by the District might not materialize. Potential users do not favor the District's alleged unreasonable policies and alleged mismanagement practices. The evidence supports a finding that costs of upwards of $25,000 would be necessary for the District to acquire a revenue source of $8,000 annually. The evidence shows Cedar has installed a loop pipe system within the area to provide service inclusive of fire protection.

When applied to the test of balance concerning the public interest as a whole, weighing adequacy of service against the desirability of competition or the impact on existing facilities and the deferring to the discretion of the P.S.C. in determining policy upon the question, the evidence is substantial and competent to support the findings and order of the P.S.C.

The issues presented on this appeal are found to the favor of appellants. The judgment of the circuit court is reversed and this cause is remanded with instructions to the Circuit Court to enter its order approving the order of the Public Service Commission granting a certificate of convenience and necessity to the applicant.

All concur.