**OSAGE WATER COMPANY,**
**Plaintiff–Appellant,**

**v.**

**MILLER COUNTY WATER AUTHORITY, INC., Defendant–Respondent.**

**No. 21022.**

Missouri Court of Appeals,
Southern District,
Division One.

July 7, 1997.

Motion for Rehearing or Transfer
Denied July 29, 1997.

Application to Transfer Denied
Sept. 30, 1997.

---

Gregory D. Williams, Sunrise Beach, for plaintiff-appellant.

Gary W. Duffy, Mark G. Anderson, Brydon, Swearengen & England, P.C., Jefferson City, for defendant-respondent. ·

BARNEY, Presiding Judge.

Osage Water Company (Plaintiff) appeals from the trial court's judgment denying its condemnation petition. Plaintiff sought to condemn certain real property located in Camden County, Missouri, so that it could commence providing public water service, notwithstanding the fact that Miller County Water Authority, Inc. (Defendant) was already providing that service from the same property Plaintiff sought to condemn.

The trial court found that Defendant was "another provider of public utility service" under § 523.010.4.[1] The trial court also determined that under § 523.010.4 Plaintiff was prohibited from condemning Defendant's property. Lastly, the court found that Plaintiff failed to prove the requirement of "necessity" for condemning Defendant's property.

## I.

Plaintiff is a public utility that is in the business of producing, purifying, treating and distributing water within the City of Osage Beach, Camden County, Missouri. Plaintiff currently holds a certificate granted by the Missouri Public Service Commission[2] that gives it authority to provide and sell water service within its certificated area of Osage Beach, Camden County, Missouri.[3]

---

1. *See* § 523.010.4, RSMo 1994. All other statutory references are to RSMo 1994, unless otherwise indicated.

2. The Missouri Public Service Commission is charged with the responsibility of regulating public utilities and establishing rates. *See* § 386.250(3) and §§ 393.110–.290.

3. Defendant presented testimony from James Merciel, the assistant engineering manager of the Public Service Commission. He testified that a

Defendant is a not-for-profit corporation that has a beneficial relationship with the Miller County Public Water Supply District No. 2, and provides water service to residents in Camden and Miller County, Missouri. Defendant has been providing this service since 1995. Defendant pumps water from the ground, treats the water, pumps it into storage towers and then to homes, meters water consumption, and charges its customers for its service. Defendant holds an operating permit issued by the Missouri Department of Natural Resources which gives it authority to *dispense* water to the public. However, this permit does not give Defendant the authority to *sell* water to the public. This is because Defendant does not currently hold a certificate from the Public Service Commission giving it a certificated area in which it can sell water to the public.

Despite not holding a certificate from the Public Service Commission, Defendant sells water service to the residents of Dogwood Park Estates and Woodland Cove in Camden County, Missouri. These two subdivisions are within Plaintiff's certificated area of service. Plaintiff asseverates that only it is authorized to provide water service to the two subdivisions.

Plaintiff raises two points of trial court error in denying its condemnation petition: (1) in determining that Plaintiff is subject to § 523.010, the general statute governing condemnation proceedings, and in determining that Defendant was a "public utility" and therefore not subject to condemnation proceedings from another public utility; and (2) in determining that it was not "necessary" for Plaintiff to condemn Defendant's property so that it could provide water service to the residents of the two subdivisions at issue. Point One is dispositive herein. Consequently, Point Two is not addressed.

## II.

▮ This was a court tried case and we therefore follow the dictates of Rule 73.01.[4] *See Weaver v. Helm,* 941 S.W.2d 801, 804 (Mo.App.1997). We review both the law and the evidence giving due regard to the superior position of the trial court to assess the credibility of the witnesses. *Id.* The judgment of the trial court must be sustained unless it is without substantial evidentiary support, unless it is against the manifest weight of the evidence, or unless it erroneously declares or applies the law. *Id.* (citing *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)).

▮ Eminent domain is the power to take property for public use and is an inherent power of the state. *State ex rel. Missouri Cities Water Co. v. Hodge,* 878 S.W.2d 819, 820 (Mo. banc 1994). The legislature has the exclusive role of delegating the power of eminent domain to various public and private entities by statute, subject to limitations found in the United States and Missouri constitutions and other Missouri statutes. *See Southwestern Bell Tel. Co. v. Newingham,* 386 S.W.2d 663, 665 (Mo.App.1965); Mo. Condemnation Practice, § 1.1 (MoBar 2d ed.1988); *see, e.g.,* § 523.010.4. In addition to constitutional and statutory limitations, statutes which delegate the power of eminent domain to these various public or private entities are strictly construed by the courts. *See id.* (citing *Missouri Highway & Transp. Comm'n v. Eilers,* 729 S.W.2d 471 (Mo.App. 1987)).

## III.

▮ In Plaintiff's first point of error, it argues that § 523.010 is not applicable to water utilities. Plaintiff, however, cites no authority for that proposition. Plaintiff avers that § 523.010 applies to every public

certificated area permits a water company to provide and sell water service to the public in a particular area and allows the company to do all things necessary to provide that service (e.g., building facilities and treating and storing water). If the Public Service Commission determines from a company's filing of application that there is a need for service and that it is feasible for that company to provide the service, the Commission will issue a certificate of conve-

nience and necessity to the company for that area. The engineer for the Public Service Commission also testified that the certificate is not necessarily an exclusive license.

4. All rule references are to the Missouri Rules of Civil Procedure (1996), unless otherwise indicated.

utility except water utilities because the statute does not specifically mention "water corporations."

■ Plaintiff's assertion that it derives its power of eminent domain from § 393.020 is correct, but its unsupported contention that it is therefore not subject to § 523.010 is without merit.

Many utility companies derive their power of eminent domain from other statutes but remain subject to the procedures and limitations found in § 523.010.[5] Section 523.010.4 sets forth a limitation placed upon public utilities' right of eminent domain, and it states as follows:

> Except as provided in subsection 5 of this section, nothing in this chapter shall be construed to give a *public utility,* as defined in section 386.020, RSMo, or a rural electric cooperative, as provided in chapter 394, RSMo, the power to condemn property which is currently used by *another provider of public utility service,* including a municipality or a special purpose district, when such property is used or useful in providing utility services, if the public utility or cooperative seeking to condemn such property, directly or indirectly, will use or proposes to use the property for the same purpose, or a purpose substantially similar to the purpose that the property is being used by the provider of the public utility service.

§ 523.010.4 (emphasis added).

A similar argument to the one Plaintiff makes was rejected in *Newingham,* 386 S.W.2d at 663.

The court in *Newingham* explained that § 523.010 " 'represents a consolidation of the various grants of the power of eminent domain to companies organized for various purposes.' " *Id.* at 667 (quoting *Union Elec. Co. v. Jones,* 356 S.W.2d 857, 859 (Mo. banc 1962)). The court held that "statutes relating to the same subject matter should be considered together and harmonized if possible so as to give meaning to all of the provisions of each." *Id.* at 668.

Prior to the *Newingham* decision, the Missouri Supreme Court also rejected a similar argument made regarding the application of § 523.010 together with another eminent domain statute. The Court held that:

> where one statute deals with a subject in general and comprehensive terms and another deals with the same subject in a more minute and definite way, the two should be read together and harmonized if possible, and with a view to giving effect to a consistent legislative policy, but that to the extent of any repugnancy between them the definite prevails over the general.

*Union Elec. Co.,* 356 S.W.2d at 860; *see also State ex rel. Lebeau v. Kelly,* 697 S.W.2d 312, 315 (Mo.App.1985).

■ We think it is clear that § 523.010 and § 393.020 must be read in juxtaposition because they deal with precisely the same subject matter. Section 393.020 is the specific statute conferring upon water corporations the power of eminent domain. Section 523.010 is a more general statute which both broadens and limits the power of eminent domain. There is no repugnancy between the terms of either statute at issue. Section 393.020 "provides the original score and section 523.010 provides a concordance which makes a total orchestration." *See Newingham,* 386 S.W.2d at 668. Accordingly, § 523.010.4 expressly limits the power of eminent domain derived from § 393.020 by not permitting one public utility to condemn the property of another public utility where the condemnor will use the property for substantially the same purpose.

Plaintiff argues that, in any event, Defendant is not a "public utility" as that term was defined by the Missouri legislature. *See* § 386.020(32) (amended and re-numbered, *see* § 386.020(42), RSMo Cum.Supp.1996). Plaintiff maintains that because Defendant is not a "public utility," Plaintiff has the authority, as a public utility, to condemn Defendant's property. We disagree.

■ The Missouri legislature defined a public utility as "every ... water corporation

---

5. *E.g.,* Railroads are subject to the provisions of § 523.010 but derive their power of eminent domain from § 388.210. Rural electric cooperatives are subject to the provisions of § 523.010 but derive their power of eminent domain from § 394.080.

... as ... defined in this section, and each thereof is hereby declared to be a public utility and to be subject to the jurisdiction, control and regulation of the commission and to the provisions of this chapter." *Id.* The legislature defined a water corporation as:

> every corporation, company, association, joint stock company or association, partnership and person, their lessees, trustees, or receivers appointed by any court whatsoever, owning, operating, controlling or managing any plant or property, dam or water supply, canal, or power station, distributing or selling for distribution, or selling or supplying for gain any water.

§ 386.020(51) (amended and re-numbered, *see* § 386.020(58), RSMo Cum.Supp.1996). Defendant is a not-for-profit corporation organized under § 355.025. A "not-for-profit" corporation means a corporation where no part of the income or property is distributable to its members, directors, or officers. *See* 18 C.J.S. *Corporations* § 5 (1990). We do not interpret the legislature's definition of "water corporation" to exclude not-for-profit corporations.

■■■■ We believe Defendant is a "water corporation," as defined by the Missouri legislature, because it is incorporated and is in the business of operating, managing and providing water service to the public for compensation. *See* § 386.020(51) (amended and re-numbered, *see* § 386.020(58), RSMo Cum. Supp.1996). "To constitute a public utility and be subject to regulation by the Commission, a service must be devoted to public use." *Khulusi v. Southwestern Bell Yellow Pages, Inc.*, 916 S.W.2d 227, 232 (Mo.App. 1995) (citing *State ex rel. M.O. Danciger & Co. v. Public Serv. Comm'n*, 275 Mo. 483, 205 S.W. 36, 40 (Mo. banc 1918)). The crucial factor in *Khulusi* that the court examined to determine that Southwestern Bell Yellow Pages was not a public utility was that it used "private contracts" to publish advertising, thereby removing it from the realm of public utility status. *Id.* at 232.

In *Danciger,* the court affirmed the proposition that "in determining whether a corporation is or is not a public utility, the important thing is, not what its charter says it may do, but what it actually does." *Danciger,* 205

S.W. at 39. The court also stated that by professing public service and furnishing service to the general public, a service may be considered a "public utility." *Id.* at 40. In *Danciger,* there was no explicit professing of public service or undertaking to provide service to the general public, thereby removing the service at issue from regulation by the Public Service Commission. *Id.*

■■■■ Commentators have observed that in determining whether a company supplying water is a public utility, its mode of operation and the nature of its service are controlling. *See* 94 C.J.S. *Waters* § 247 (1956). A company supplying water cannot be classified as a public utility until it engages in public service or holds itself out to serve the public for compensation. *Id.* Thus, for example, when a water company undertakes to supply a city with water for municipal and domestic purposes and proceeds to fulfill its undertaking, it becomes a public service corporation. *See* 78 AM. JUR.2D *Waterworks & Water Companies* § 1 (1975).

The Colorado Supreme Court adopted what it referred to as the "universally accepted test" for determining whether a service is a public utility:

> [T]o fall into the class of a public utility, a business or enterprise must be impressed with a public interest and that those engaged in the conduct thereof must hold themselves out as serving or ready to serve all members of the public, who may require it, to the extent of their capacity.

*City of Englewood v. City & County of Denver,* 123 Colo. 290, 229 P.2d 667, 672–73 (Colo. banc 1951).

The Ohio Supreme Court has held that "an entity may be characterized as a public utility if the nature of its operation is a matter of public concern, and membership is indiscriminately and reasonably made available to the general public." *Marano v. Gibbs,* 45 Ohio St.3d 310, 544 N.E.2d 635, 637 (1989). Interestingly, we note that the court in *Marano* maintained that "while it is important that an entity be subject to regulatory control, such regulation is not necessarily required for an

entity to be considered a public utility." *Id.* at 636.

During the trial of the instant matter, Mr. Jim Merciel testified in his capacity as assistant manager of engineering for the Missouri Public Service Commission. He testified that in his professional opinion Defendant was a "public utility."

The record is void of any testimony which suggested that Defendant has refused to provide water service to any of the residents in the two subdivisions at issue. Indeed, the testimony suggested that Defendant has undertaken the responsibility to provide water service to everyone within its capability, not merely for particular persons. *See Danciger,* 205 S.W. at 42.

Defendant presented testimony from Ms. Marlen Frank, who was president of the Dogwood Park Estates homeowners' association. Ms. Frank testified that she had lived there for about 22 years and that the subdivision had experienced considerable problems with its water service. She further testified that they had negotiated with Plaintiff over a two year period to provide water service but that the terms of Plaintiff's service agreement were not acceptable to the association. Ms. Frank testified that Plaintiff told her that "if [they] would put all new lines in and drill a state approved well, then they'd take it over." She also testified that the association believed they would have to be "crazy" to do all the work and turn it over to Plaintiff.

Ms. Frank testified that sometime thereafter, negotiations with Defendant began and that they reached an acceptable agreement and that they began receiving their much-needed water service. She testified that "[t]hey've fixed the leaks ... [t]he water is clean ... [i]t's tested all the time [and] yes, [we are] very pleased."

■ Testing the facts and circumstances of the instant case by the statutory language relating to water corporations and public utilities and the rules announced by our courts and the courts of other jurisdictions and other authorities, we are of the opinion that the nature and operation of Defendant's service brings it within the realm of public utility status. Defendant sells water to the public

for compensation, and its actions suggest that it has undertaken the responsibility to provide water service to all members of the public within its capabilities. We believe therefore that Defendant's service has been devoted to public use. *See Danciger,* 205 S.W. at 40.

In affirming the judgment of the trial court, we note that Defendant may have failed to comply with statutory provisions relating to the construction and operation of a water system. *See, e.g.,* § 393.170, and *see, inter alia,* §§ 393.110–.290; 386.250, RSMo Cum.Supp.1996. Nonetheless, this failure of compliance does not detract from our determination that Defendant is a "public utility" and therefore immune from Plaintiff's condemnation attempt.

■ We note that the Public Service Commission has the authority to issue a certificate of convenience and necessity to a public utility even though such certificate will overlap with another public utility's area of service. *See, e.g., State ex rel. Missouri Pacific Freight Transp. Co. v. Public Serv. Comm'n,* 295 S.W.2d 128, 132 (Mo.1956); *State ex rel. Electric Co. of Missouri v. Atkinson,* 275 Mo. 325, 204 S.W. 897, 899–900 (Mo. banc 1918). The public interest and convenience is the Commission's chief concern when determining whether to grant more than one certificate within one certificated area. *See Missouri Pacific Freight,* 295 S.W.2d at 132; *State ex rel. Orscheln Bros. Truck Lines, Inc. v. Public Serv. Comm'n,* 433 S.W.2d 596, 605 (Mo.App.1968).

■ Plaintiff's argument that the Public Service Commission has never granted overlapping certificated areas, as a basis for reversal, is also without merit. The policy favoring regulated monopoly over destructive competition rests upon the public interest. *State ex rel. Public Water Supply Dist. No. 8 of Jefferson County v. Public Serv. Comm'n,* 600 S.W.2d 147, 154 (Mo.App.1980). It is not an absolute rule, but is applied relative to the particular facts and circumstances of each case. *Id.* Our State's policy against competition is a flexible one created to protect the public first and concerning

itself with the existing utility only in an incidental manner. *Id.* at 155.

The trial court's judgment is supported by substantial evidence and it is not against the manifest weight of the evidence. *See Gateway Exteriors, Inc. v. Suntide Homes, Inc.,* 882 S.W.2d 275, 279 (Mo.App.1994); *Nix v. Nix,* 862 S.W.2d 948, 951 (Mo.App.1993).

Based on the foregoing, the Court's judgment is affirmed. Point denied.

Point One being dispositive, we need not address Plaintiff's remaining contention of error. Finally, Defendant filed a motion to dismiss Plaintiff's appeal for violations of Rule 84.04(c) and 84.04(h) regarding procedure in appellate courts. It is denied.

The judgment is affirmed.

PREWITT, J., concurs.

GARRISON, J., concurs in result, in separate opinion.

GARRISON, Judge, concurring.

I concur in the result reached by the majority opinion, but write separately to express my concern about the issue. Section 523.010.4 provides that "nothing in this chapter shall be construed to give a public utility, as defined in section 386.020, RSMO, . . ., the power to condemn property which is currently used by *another provider of public utility service* . . ." (emphasis added). As I interpret the majority opinion, it proceeds, in part, on the theory that the phrase "another provider of public utility service" actually means another public utility. I am not satisfied that this is a correct interpretation of § 523.010.4. I do not believe that section is ambiguous. Rather, I believe that it clearly expresses an intention by the legislature that the power of condemnation shall not be exercised against another "provider" of public utility service whether or not that provider would otherwise qualify as a public utility pursuant to § 386.020(32)(amended and renumbered as § 386.020(42), RSMo Cum. Supp. 1996). I would, however, reach the same result as the majority by holding that

Defendant is a "provider of public utility service."