**PROFESSIONAL FIREFIGHTERS OF EASTERN MISSOURI, INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL 2665, Plaintiff/Appellant,**

v.

**CITY OF UNIVERSITY CITY, Mayor Shelley Welsch, Fire Chief Adam Long, City Manager Lehman Walker, and Council Members Stephen Kraft, Terry Crow, L. Michael Glickert, Paulette Carr, Arthur Sharpe, Jr., and Rod Jennings, Defendants/Respondents,**

No. ED 104585

Missouri Court of Appeals,
Eastern District,
DIVISION TWO.

Filed: March 7, 2017

Richard A. Barry, III, Megan I. Hoffman, St. Louis, MO, for Plaintiff/Appellant.

Angela Bullock Gabel, Cindy Reeds Ormsby, Kathryn B. Forster, St. Louis, MO, for Defendants/Respondents.

SHERRI B. SULLIVAN, P.J.

### Introduction

Professional Firefighters of Eastern Missouri, International Association of Firefighters, Local 2665 (Appellant or Union) appeals from the trial court's declaratory judgment entered in favor of City of University City (City), Mayor Shelley Welsch (Mayor), Fire Chief Adam Long (Fire Chief), City Manager Lehman Walker (City Manager), and Council Members Stephen Kraft, Terry Crow, L. Michael Glickert, Paulette Carr, Arthur Sharpe, Jr., and Rod Jennings (Council Members) (collectively Respondents). We affirm.

### Procedural Background

Union filed a Petition for Writ of Mandamus against Respondents, requesting the court order Respondents to comply with the Collective Bargaining Agreement (CBA) entered into between City and Union, particularly those sections dictating the minimum staffing of City's Fire Department. The court issued a preliminary order in mandamus directing Respondents to file responsive pleadings and to appear for hearing. Union then filed its First Amended Petition for Declaratory Judgment against Respondents, requesting the court hold a hearing to determine City's obligations regarding minimum staffing of the Fire Department under the existing CBA, and City's obligations regarding hiring qualified personnel to ensure City maintains its contracted minimum level of staffing in the Fire Department.

Respondents filed a Motion to Dismiss Union's Petition for Declaratory Judgment, to which Union filed a response. The court denied Respondents' Motion to Dismiss and held a trial on Union's Petition for Declaratory Judgment, at which testimony was adduced, evidence taken, and the parties filed trial briefs. The court then issued its Judgment, finding the language of the CBA regarding minimum staffing permits City to issue a reduction in force, which may have the effect of reducing the minimum number of personnel on duty. This appeal follows. Additional facts relevant to determining the merits of Union's appeal will be adduced as necessary later in this opinion.

### Point on Appeal

Union maintains the trial court erred in finding Section 2.03 of the CBA allows City to issue a reduction in force reducing the minimum number of personnel on duty because the decision was against the weight of the evidence and erroneously applied the law, in that the language of the entire CBA, along with evidence presented regarding the intent of the parties in agreeing to the language of Section 2.03, dictates a finding that City is required to staff each crew on duty with 11 firefighter/paramedics regardless of whether or not a reduction in force is issued.

### Standard of Review

The standard of review for a declaratory judgment action is the same as in any other court-tried case. Century Motor Corporation v. FCA US LLC, 477 S.W.3d 89, 94 (Mo.App. E.D. 2015). The judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Id. We apply de novo review to questions of law decided in court-tried cases. Id. The interpretation

of a contract is a question of law. Systemaire, Inc. v. St. Charles County, 432 S.W.3d 783, 787 (Mo.App. E.D. 2014).

## Discussion

■ On April 13, 2015, Union and City entered into the CBA. The CBA is a written contract between the parties setting forth the employment relationship between City and the firefighters. Article 2—Working Conditions, Section 2.03 of the CBA, titled "**Reduction In Force**," provides:

The City will maintain a staffing level of at least 11 personnel per crew on duty each day. However, in the event of a reduction in force, front-line employees assigned to a shift will be laid off by seniority regardless of job classification. Specifically exempt from this provision shall be 40–hour administrative employees, specifically the Fire Chief and Assistant Chief. Seniority is defined as length of continuous service from latest date of employment. No new employee shall be hired until the laid off employee has been given an opportunity to return to work.

On November 6, 2015, Union asked the court to determine City's obligations regarding minimum staffing of the Fire Department under the existing CBA. Union asked the court to interpret the language of the existing CBA, as written and executed by the parties, specifically the Reduction In Force provision. Union interpreted Section 2.03 to prohibit City from allowing the staffing level to fall below 11 personnel per crew. City argued the Reduction In Force provision of the CBA expressly permits City to issue a reduction in force and thus reduce the staffing level below the optimum number of 11 personnel per crew.

On June 27, 2016, the trial court issued its Order and Judgment, finding in particular part:

The parties agree on the facts. Instead, this case rests on a question of law. The issue is the Court's interpretation of Section 2.03 of the CBA. More specifically, the question is whether the City must maintain a minimum of eleven (11) personnel on duty if it issues a reduction in force. . . .

After noting and applying the rules on contract interpretation, namely (1) to ascertain the intention of the parties, see J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club, 491 S.W.2d 261, 264 (Mo.banc 1973); (2) to give reasonable meaning to each phrase and clause, see SD Inv. Inc. Mo. v. Michael–Paul, LLC, 90 S.W.3d 75, 81 (Mo.App. W.D. 2002); and (3) to harmonize all provisions of the contract so as not to leave some provisions without function or sense, see Id.; the trial court held:

The Court finds the language in Section 2.03 of the CBA allows the City to issue a reduction in force that may have the effect of reducing the number of personnel on duty. The first two sentences of Section 2.03 read, "The City will maintain a staffing of at least 11 personnel per crew on duty each day. *However*, in the event of a reduction in force, front-line employees assigned to a shift will be laid off by seniority regardless of job classification." (Emphasis added.)

The above interpretation gives meaning to the entire paragraph, Section 2.03 titled "Reduction in Force." The word 'however' modifies the first sentence to allow the City to lower the number of personnel per crew on duty.

The trial court further noted the evidence indicated the actual reduction in force did not alter the services that residents of City receive because City merely eliminated positions already vacant and, as a result, the safety and welfare of City residents has not been affected.

■ The first two sentences of Section 2.03 must be read in juxtaposition because

they deal with precisely the same subject matter. Osage Water Co. v. Miller County Water Authority, Inc., 950 S.W.2d 569, 573 (Mo.App. S.D. 1997). The two sentences must be read in harmony with each other and without repugnancy, if possible. The first sentence, read by itself, even though it contains the word "will," does not necessarily preclude any exceptions. This is especially true when the sentence is directly followed by a sentence beginning with the word "However," which immediately suggests there will be exceptions to the normally mandatory 11–person shift contemplated in the contract. "However" is an adverb, meaning "used to introduce a statement that contrasts with or seems to contradict something that has been said previously."[1] Employing the plain and ordinary dictionary meaning of the word allows Section 2.03 to be construed without resorting to extrinsic evidence of intent. "The word 'however' in a contract is a word of exclusion, indicating an alternative intention, a contrast with a previous clause and a modification of it under other circumstances." Niswonger v. Farm Bureau Town & Country Ins. Co. of Missouri, 992 S.W.2d 308, 322 (Mo.App. E.D. 1999). "However" is commonly understood to be synonymous with words and expressions such as "notwithstanding," "in all events," and "in any case, nevertheless." Id. These meanings are supported by reference to the dictionary. Id.

Such a reading harmonizes the two sentences and eliminates any conflict or repugnancy between them. In determining the intent of the parties to a contract, we review the terms of a contract as a whole, not in isolation. Lacey v. State Bd. of Registration For The Healing Arts, 131 S.W.3d 831, 838 (Mo.App. W.D. 2004).

Reading the contract as a whole includes giving due significance to the titles of sections, such as the one at issue, "SECTION 2.03—REDUCTION IN FORCE." Such a title requires acknowledgement its contents are going to contemplate and address the realities and contingencies of cutbacks in the current or optimal number of personnel. Failure to recognize that reality renders the title itself meaningless. "Each term is construed to avoid an [effect] which renders other terms meaningless: a construction which attributes a reasonable meaning to all of the provisions of the agreement is preferred to one which leaves some of them without function or sense." Bolton v. Bolton, 950 S.W.2d 268, 271 (Mo.App. E.D. 1997).

The parties in this case agree the language in the contract is not ambiguous. In such a case, intent is to be determined from the contract alone. Systemaire, Inc., 432 S.W.3d at 787. A court is not permitted to create an ambiguity in order to distort the language of an unambiguous agreement, or, in order to enforce a particular construction which it might feel is more appropriate. Rodriguez v. Gen. Accident Ins. Co. of Am., 808 S.W.2d 379, 382 (Mo. banc 1991).

Here, we can ascertain intent from the language of Section 2.03 of the CBA that unless circumstances leading to a reduction in force demand otherwise, personnel per crew on duty each day will be 11. The possibility of a reduction in force was anticipated by the parties in the very crafting and most certainly in the titling of Section 2.03.

A reduction in force is a power vested in City by virtue of Section 1.09 of the CBA. Section 1.09, titled "Management Rights," explicitly states:

The Union recognizes that any and all rights concerned with the management

---

1. https://www.en.oxforddictionaries.com/ definition/however

of the Fire Department and direction of the working forces are exclusively that of the City except where expressly and specifically modified, limited and restricted by the provision of this CBA. Such functions include, but are not limited to, the right to select and hire, to assign work to employees ... to determine the number of employees required in any function or any job, to relieve employees from duty because of lack of work, or for other legitimate reasons....

Section 1.09 of the CBA expressly states City will have all management rights of the Fire Department, unless otherwise provided for in the CBA. Section 1.09 of the CBA permits City to reduce the number of firefighters on staff due to lack of work or for other legitimate reasons. The management powers set forth in Section 1.09 are broad and comprehensive, and the language of Section 2.03, as written, does not prohibit City from exercising such authority to manage the fire department personnel when essential.

Based on the foregoing, we find City has the power to issue a reduction in force resulting in a cutback in the optimum daily staffing level of 11 fire department personnel per crew. As such, we find the trial court's Order and Judgment is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. Century Motor Corporation, 477 S.W.3d at 94. Union's point on appeal is denied.

### Conclusion

The judgment of the trial court is affirmed.

Roy L. Richter, J., and Colleen Dolan, J., concur.